Argued January 26, reversed February 14, rehearing denied March 27, 1928.

## CARRIE TOWNSEND, ADMINISTRATRIX, *v.* A. JALOFF.

(264 Pac. 349.)

**Highways—Driver Leaving Milk Truck on Highway With Right Wheels Twelve or Eighteen Inches Off Pavement Held Negligent, as Matter of Law—"Park" (Laws 1921, p. 712, § 2, Subd. 19).**

Driver of milk truck, parking truck on highway in front of customer's house while delivering milk, with right wheels not more than a foot or eighteen inches off the pavement, *held* guilty of negligence, as matter of law, in action for his death, resulting on return to car on account of being struck by stage proceeding from rear of truck, since truck driver was guilty of violation of Laws of 1921, page 712, Section 2, subdivision 19, which provides no vehicle shall be parked upon the main-traveled portion of the highway unless so disabled as to prohibit moving thereof; term "park" being defined under similar statutes as voluntary act of leaving car on main-traveled portion of highway when not in use.

---

Motor Vehicles, 42 C. J., p. 613, n. 75, p. 1007, n. 30, p. 1273, n. 74.

From Multnomah: WALTER H. EVANS, Judge.

Department 1.

This is an action for damages, brought by plaintiff as administratrix of the estate of J. W. Townsend, deceased. At all times mentioned herein, the defendant was engaged in operating a line of stages over

the Columbia River Highway under the assumed name of "Columbia Stages." On November 11, 1924, Townsend, plaintiff's intestate, was operating a milk truck over that portion of the Columbia River Highway situate near Fairview, Multnomah County, Oregon. Between the hours of 8 and 9 A. M. on that day, Townsend was driving his truck in a westerly direction on the highway above named, and when he reached a point about one mile west of Fairview he halted the truck to deliver milk to a customer. The truck was brought to a standstill on the northerly and right side of the paved way, with the two right wheels twelve to eighteen inches off the pavement.

The plaintiff avers that her intestate, after delivering the milk, returned to the car, and when about to start the truck was run into by one of defendant's stages, suffering injuries from which he died. She alleges negligence upon the part of the defendant, in that he failed to keep a proper lookout for vehicles ahead of him; that, notwithstanding plaintiff's intestate left plenty of room for vehicles going west to turn to the left, defendant negligently turned to the right and drove off the surfaced highway; that the defendant was operating his car at a dangerous and reckless rate of speed in view of the situation, and negligently failed to have it under control.

The defendant admitted the first two paragraphs of the complaint, but denied each and every other allegation contained therein. For a further and separate defense, defendant alleged that, while he was carefully operating his stage in a westerly direction on the Columbia River Highway on the date of the accident, and when he had reached a certain point on that highway, he discovered the intestate's automobile, wholly parked upon the paved surface of the highway, and, in order to avoid an imminent rear-

end collision with the machine of plaintiff's intestate or a head-on collision with an automobile approaching from the opposite direction, he swung to the right of intestate's automobile and was proceeding carefully, when the intestate, suddenly and unexpectedly and negligently, and before defendant's stage could be brought to a stop, jumped directly in front thereof, which negligent act resulted in the injury described in the complaint.

The reply put in issue the new matter contained in the answer. Plaintiff recovered a judgment for $5,000. Defendant appeals, and assigns error chiefly in the refusal of the court to charge the jury with reference to the law prohibiting "parking" upon the highways of this state.

REVERSED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Samuel B. Weinstein* and *Mr. Frank J. Lonergan,* with oral arguments by *Mr. Weinstein* and *Mr. A. E. Clark.*

For respondent there was a brief over the name of *Messrs. Davis & Harris,* with an oral argument by *Mr. Paul R. Harris.*

BROWN, J.—The disposition of this case involves the application and exposition of a statutory provision reading:

"No vehicle shall be parked upon the main-traveled portion of the highways of this state; provided, that this shall not apply to any vehicle so disabled as to prohibit the moving of the same." Subd. 19, § 2, Chap. 371, Gen. Laws of Or. 1921.

The defendant requested the court to give the following instruction:

"I instruct you that under the laws of the state of Oregon the parking of a vehicle on the main-traveled portion of the highway is prohibited. The language of the statute on that subject is as follows:

"'No vehicle shall be parked upon the main-traveled portion of the highways of this state; provided that this shall not apply to any vehicle so disabled as to prohibit the moving of the same.'

"In this connection, I instruct you that the milk truck of J. W. Townsend, the plaintiff's decedent, was parked on the main-traveled portion of the highway at the time and place of the accident mentioned in plaintiff's complaint, and on account thereof plaintiff's decedent was guilty of negligence as a matter of law. And in this connection I instruct you further that if you find from the evidence in this case that the negligence of plaintiff's decedent in this regard contributed to and was the proximate cause of the accident complained about, then your verdict must be for the defendant."

For a definition of the term "park," the plaintiff relies upon the case of *Dare* v. *Boss,* 111 Or. 190 (224 Pac. 646). In that case the learned justice who wrote the opinion said:

"We take it that it (the word 'park') means something, more than a mere temporary or momentary stoppage on the road for a necessary purpose."

Now, in determining upon the meaning of the excerpt just quoted, let us look to the facts in that case, and to the court's observation relating to the duty of removing a disabled car from the main-traveled portion of the highway. The plaintiff therein was traveling on the main highway between Scappoose and Portland, when one of the tires of his car became punctured, and he pulled the car to the right side of the highway, leaving the left wheels from eighteen to twenty inches inside the pavement.

While he was repairing the puncture the defendant's car crashed into him, inflicting the injuries described in the complaint. In that case the plaintiff testified that one of the front tires was so flattened as a result of the puncture that it would have been dangerous to drive further with it in that condition; that he brought his car to a standstill as far off the road as appeared safe, and that there was sufficient space for the car operated by the defendants to pass him without injury. In rendering its decision in that case the court held that this statute does not require a person to take "chances of any serious injury by removal of a disabled car"; that the "rule of reason" applied; and that if it had appeared to the jury that the plaintiff could have moved the car safely, he would have been guilty of contributory negligence in failing so to do. Thus it is seen that that case is based on facts essentially different from the facts in the case at bar.

In the case of *O'Brien* v. *Royce,* 111 Or. 488 (227 Pac. 520), this court quoted from the findings of the jury as follows:

"Q. Did the plaintiff, at the time of the accident, have his car parked on the main-traveled part of the road? A. No."

That case cites with approval the case of *Dare* v. *Boss, supra,* but it does not undertake to define the term "park" as used in the statute. With reference to that term the court said:

"The court was not requested to define the word 'park,' as used in the statute. It is a term that has come into general use, and probably every juror understood its meaning."

In the case at bar, the defendant requested the court to define the term as used in the statute.

The term "to park" has been used in a varied sense. It may mean:

"To bring together in a park, or compact body; as, to park artillery, wagons, automobiles, etc." Webster's New International Dictionary.

To the same effect is Funk & Wagnall's New Standard Dictionary of the English Language.

Under statutes similar to ours, the term "park" has been defined by the courts as meaning, in substance, the voluntary act of leaving a car on the main-traveled portion of the highway when not in use.

The Wisconsin statute provides:

"Except when making absolutely necessary repairs, no person shall park or leave any vehicle along, upon, or within the limits of any public highway in such manner as to interfere with the free passage of vehicles over and along such highway." Stats. 1925, § 85.02.

Concerning this statute the Supreme Court of Wisconsin, in the case of *Kastler* v. *Tures*, 191 Wis. 120 (210 N. W. 415), said:

"This statute applies to parking cars on the highway, an expression well understood to mean the voluntary act of leaving a car on the highway when not in use."

In the case of *Ex parte Corvey* (Mo. App.), 287 S. W. 879, the court had under consideration an ordinance forbidding the parking of vehicles on the public highways, and which defined the term "park" in the following language:

"To stand or store any vehicle on a public highway at a time when it is not being loaded or unloaded."

In rendering its opinion in the case, the court defined that term as follows:

"The term 'parking,' when applied to the traffic of automobiles or vehicles, is well known and understood. It means to permit such vehicle to remain standing on a public highway or street."

In the case of *Colvin* v. *Auto Inter-Urban Co.,* 132 Wash. 591 (232 Pac. 365), the Supreme Court of Washington had under consideration Section 6347, Rem. Comp. Stats., a part of the general road laws of that commonwealth, reading:

"It shall be unlawful for any person to leave any vehicles standing upon the main-traveled portion of any highway of this state; provided, that this provision shall not apply to any vehicle so disabled as to prohibit the moving of the same."

In commenting upon this statute, the court held that it should be given a reasonable and workable construction; that in case of a proper excuse for stopping a car, it should be sufficient if a reasonable effort be made to get it entirely off the main-traveled portion of the road, or as nearly so as the circumstances would permit, but that, before such car could be lawfully stopped upon the main-traveled portion of any highway of the state, "there must be some reasonable excuse for stopping the car, and that a reasonable effort must be made to get it entirely off the main-traveled portion of the road, or as nearly so as the circumstances will permit."

On the morning of the accident, plaintiff's intestate parked his milk truck on the highway in front of the house of a customer, with the right wheels thereof not more than a foot or eighteen inches off the pavement. The testimony shows that the ground on the immediate right of the parked car was wet and soft. It also shows, however, that adjoining that spot there

was a stretch of solid ground about seventeen feet in width and extending for a distance of 200 feet, where he could have pulled off the highway and stopped his car to deliver the milk. Nor is it pretended that the truck was disabled, or that the intestate halted with it partially on the pavement on account of inability to travel further. Hence this case is embraced within the prohibition of the Motor Vehicle Law, which says no vehicle shall be parked upon the main-traveled portion of the highways of this state.

In a case where there is ample room to clear the pavement, a law against parking upon the public highways cannot be evaded by stopping a car with the right wheels off the pavement. That this decedent could have driven his car onto level ground on the right of the pavement before parking is established beyond peradventure. This law was enacted in the interest of the common welfare. Its purpose is to safeguard the traveling public against dangerous obstructions upon the thoroughfare of the state. It is a wholesome law, and should not be pared by construction.

Because of the refusal of the court to give the instruction hereinbefore set out, this case is reversed and remanded.

REVERSED AND REMANDED.    REHEARING DENIED.

RAND, C. J., and McBRIDE, J., concur.

COSHOW, J., concurs in the result.