Argued February 5, reversed April 30, rehearing denied June 4, 1929.

FRANK V. MARTIN *v.* OREGON STAGES, INC.

(277 Pac. 291.)

438

For appellant there was a brief over the names of *Mr. B. P. Gibbs* and *Messrs. Emmons, Lusk & Bynon,* with an oral argument by *Mr. Hall S. Lusk.*

For respondent there was a brief over the names of *Messrs. Lonergan & Wagner, Mr. Lars R. Bergsvik* and *Mr. Neal R. Crounse,* with oral arguments by *Mr. Lonergan* and *Mr. Bergsvik.*

COSHOW, C. J.—We are saved the trouble of searching the record for the purpose of determining whether or not defendant was guilty of negligence. Defendant concedes that there is sufficient evidence of its negligence to take the case to the jury.

Defendant insists, however, that plaintiff was guilty of contributory negligence as a matter of law. This argument is based upon the contention that plaintiff parked his truck on the main-traveled portion of the highway. One who parks a motor vehicle on the main-traveled portion of the highway without necessity therefor is guilty of negligence: *Townsend* v. *Jaloff*, 124 Or. 644 (264 Pac. 349); *Watt* v. *Associated Oil Co.*, 123 Or. 50 (260 Pac. 1012); *O'Brien* v. *Royce*, 111 Or. 488 (227 Pac. 520); *Dare* v. *Boss*, 111 Or. 190 (224 Pac. 646). Whether or not plaintiff parked his truck on the main-traveled portion of the highway determines the charge of negligence under consideration. If plaintiff parked his truck as asserted by defendant he is guilty of negligence as a matter of

law and cannot recover. There could hardly be a difference of opinion regarding such negligence contributing to plaintiff's injury.

■ ■ The word "park" as used in the statute has not been accurately defined. It cannot be precisely defined so as to apply the meaning of the legislature to all cases. Whether or not a motor vehicle standing in the roadway is parked must be determined from all of the surrounding circumstances and the reason for the vehicle standing. The statute in force at the time of the collision in the instant case reads as follows:

"No vehicle shall be parked on the main-traveled portion of the highways of this state; provided, that this shall not apply to the vehicle so disabled so as to prohibit the moving of the same." Gen. L. 1921, Chap. 371, § 2, subd. 19.

The proviso cannot be applied in all cases literally. The words "so disabled as to prohibit" does not necessarily indicate that the vehicle could not be moved but that it would be unsafe to move it under the conditions existing at the place and time. To illustrate: An automobile was moving along the highway along the side of a mountain. The highway at that place was a mere shelf, 20 to 24 feet wide, with a precipitous mountain on one side and a perpendicular bank on the other; the road was from 50 to 75 feet above the river which flowed at the foot of the mountain. The highway was not straight but curved in and out with the contour of the mountain. Suddenly the lights of the automobile were extinguished for some cause. The automobile was not otherwise impaired. It was not so disabled but what it could move with its own power, yet it was absolutely unsafe to do so. It would have been unsafe to have moved,

not only for the occupants but for other travelers along the highway. It dared not move to the right of the road because of the precipitous bank between the road and the river. No one would say that the automobile under those conditions was not so disabled as to prohibit the moving of the same; notwithstanding it could have moved on its own power without difficulty; consequently we cannot apply said Section 2, subdivision 19, above, literally. The language must be so employed as to give effect to the legislative intent. In other words the language must be construed in a reasonable way.

This court has ruled on the meaning of the word "park" and its relation to questions of fact and questions of law in *Dare* v. *Boss,* 111 Or. 190, 197 (224 Pac. 646). This court wrote through Mr. Justice McBRIDE:

"We find no definition in the statute of the word 'park,' but we take it that it means something more than a mere temporary or momentary stoppage on the road for a necessary purpose. Neither do we understand this statute to require a person to incur any chances of any serious injury by removal of a disabled car; but in such case, if the testimony indicates that such removal would incur danger to the person occupying the car, there is no hard and fast rule requiring him to take such chances. * * We do not think, as a matter of law, the court could say to the jury that the plaintiff was guilty of contributory negligence, but properly left it to the jury to find on this subject."

*Dare* v. *Boss,* above, has been cited with approval in later cases: *O'Brien* v. *Royce,* 111 Or. 488, 497 (227 Pac. 520) ; *Townsend* v. *Jaloff,* 124 Or. 644, 648 et seq. (264 Pac. 349). In *Watt* v. *Associated Oil Co.,* 123 Or. 50, 54 et seq. (260 Pac. 1012, 1013), Mr. Justice

McBride, speaking for the court again, used the following language:

"The testimony here is conflicting, but as the jury is made by law the judge of the value and effect of evidence, we have no right to set aside the verdict unless there was a total lack on the part of plaintiff to introduce any substantial evidence to sustain her contentions. * *

" * * but conceding that the pleading is sufficient, the jury was the judge as to whether the truck was actually stopped for the purpose indicated in Kumler's testimony, and, if so, the jury was still the judge as to whether there was such an emergency as to justify such stoppage at that place; and, under the surrounding circumstances, the defendant Kumler was the best judge as to this."

From these authorities we hold that this court is committed to the rule that the jury is the judge of the question as to whether or not the truck driven by plaintiff was actually parked in the technical sense of that word as used in our statute. If the truck was standing partially on the traveled portion of the highway because of a necessity for some temporary repair and the driver was engaged in making the necessary repair, then plaintiff was not guilty of contributory negligence in that regard: *Agee* v. *Chapin*, (Or.) (274 Pac. 1097), decided March 5, 1929. In determining this question the jury had the right to consider the testimony of plaintiff. The facts that the fog light is required by law to throw its rays on a certain part of the highway; that there was a great deal of traffic on the highway at the time, the night was dark and rain was falling were doubtless considered by the jury. These circumstances and conditions with the testimony of the plaintiff constitute evidence that plaintiff was not violating the law in

stopping when and where he did. The jury having determined that fact against defendant we are precluded from declaring the conduct of plaintiff in that behalf to be negligent.

■ The conduct of the plaintiff just before and at the time of the accident must be judged by the appearances and conditions at the time. The fact that plaintiff could have driven his truck entirely off the traveled portion of the highway a few feet farther along, if that is a fact, does not necessarily require the court to hold that plaintiff was guilty of contributory negligence by stopping where he did. If he did what a reasonably prudent man would have done under the circumstances, we cannot say as a matter of law that he is guilty of contributory negligence.

■ The next contention on the part of defendant as a reason for asking this court to hold plaintiff guilty of contributory negligence is his failure to have his truck properly equipped with rear lights. It must be conceded, since the verdict of the jury was rendered, that plaintiff's truck was equipped with three rear lights, all colored. The law requires a vehicle over six feet in width or having a load thereon over six feet in width to have a white light on or near the left rear corner of the vehicle or load. Said white light is required to be placed so that it may be seen either from the front or rear. The plaintiff admits that his truck was not so equipped, but he had a red light where the law required a white light. Defendant earnestly contends that the absence of the white light was the approximate cause of the collision and therefore of plaintiff's injury. If we can say that such is the case, then plaintiff was not entitled to recover. Disobedience of the law is negligence. The

question to be determined in this connection is, was the absence of a white light the approximate cause of the collision?

This court cannot say that a red light instead of a white light on the left side of the track driven by plaintiff was the approximate cause of plaintiff's injury. The testimony of the driver of the stage which collided with plaintiff's truck fails to show that the absence of the white light contributed in any degree to the collision. His testimony in that regard in part is as follows:

"Q. When you first saw the truck, as you state, between fifty and sixty feet away from you, how near to that truck was the nearest approaching car?

"A. Well, it was just coming up even with the truck that was on the pavement. In fact, it was south of the truck that was on the pavement.

"Q. About how many feet, in your best judgment?

"A. Well, it was ten to twenty feet, anyway.

"Q. And what, if any, lights did that oncoming car have illuminated at that time and place?

"A. What is that?

"Q. What lights, if any, did this oncoming car bear?

"A. Well, it had bright headlights.

"Q. With that situation, Mr. Davenport, before you, what did you then do?

"A. Why, I applied the brakes. When I applied the brakes I first thought of taking the ditch on the right-hand side, and at the same time I seen those pipes, and I knew that those pipes were coming back through the bus and would probably injure or kill a number of my passengers, and the only thing I could do was just to wait until this truck or car, whichever it may have been, coming to meet me, got by far enough that I could try to go around him.

"Q. Having formed that conclusion, what did you then do; which direction did you turn to?

"A. I turned to the left just as hard as I could, just as soon as the truck gave me clearance enough so that I wouldn't hit him head on."

It thus appears that an automobile or truck with bright lights traveling in the opposite direction from that of the stage prevented the driver of the stage from clearing plaintiff's truck. There is no pretense on the part of the driver of the stage that the absence of the white light in any degree prevented him from clearing the truck operated by plaintiff. It is questionable whether or not as a matter of law the court could not say the absence of the white light was not a contributing cause to plaintiff's injury. In any event under the circumstances, the question was one of fact which has been determined by the jury against defendant, and we cannot re-examine it.

■ The testimony of the driver of defendant stage was that there were no lights on the rear of the truck. The testimony of plaintiff was that three lights were on the rear of the truck. Both of the said witnesses were corroborated by other witnesses. There is then a positive conflict in the testimony, making a typical case for the jury to determine.

■ Defendant objected to the evidence adduced by plaintiff as to the speed the stage was traveling and saved an exception to the ruling of the court on its objection. The following is the evidence objected to. The witness Carl Hoflich was called by plaintiff and testified as follows:

"Q. When this stage passed you, how fast was it going, if you can say?
"A. Well, I judge it was going between thirty-five and forty miles."

Witness George C. Hester in behalf of plaintiff testified as follows:

"Q. Now, what will you say to the jury with reference to the speed of this stage in which you were riding as to whether or not the speed changed any, either increased or slowed down, for a mile before this accident occurred?

"A. The speed was approximately the same."

The witness Hoflich was driving a truck toward the south and was overtaken and passed by the stage about one-half mile north of the scene of the collision. He was in a good position, therefore, to estimate with reasonable accuracy the speed of the stage. It is true the estimate made was of the stage a half mile from the accident and if that was all the testimony in regard to the rate of speed it might be inadmissible under the ruling in *Ramp* v. *Osborne,* 115 Or. 672, 676 (239 Pac. 112). The testimony in the Ramp case regarding the speed of the automobile was four or five miles distant from the collision. The difference in the distance may not be so material but in the Ramp case there was no evidence that the driver of the offending automobile maintained that speed to the place of the collision. In the instant case there is testimony of the witness Hester, a passenger in the stage, that the stage did not change its speed perceptibly while covering a mile immediately preceding the collision. The testimony of the two witnesses together is some evidence of the rate of speed the stage was traveling at the time of the collision. The value and weight of that testimony was for the jury.

██ Defendant insists that it was error for the court to give the following instruction:

"And the next charge is that the motor bus was not equipped with a windshield wiper. The exercise of due care may imply that the driver should employ some device or method of cleaning his windshield from time to time in the event that the glass becomes

covered with any substance which obstructs his vision ahead, but there is no express rule applicable to this charge, however, and the state motor vehicle act does not require a windshield wiper as a part of the equipment of an automobile. But we have seen that the driver must maintain a lookout ahead so as to apprise himself of the presence of others upon the highway, and this, of course, *implies that no obstruction should be permitted to remain negligently upon the windshield which would render it impossible for him to see objects ahead whose presence might be affected by the driving of his automobile."*

The italics are defendant's. The instruction is not free from criticism. We do not believe, however, that it constitutes reversible error. It would be impossible perhaps for any presiding judge to give a charge to the jury absolutely free from error if sentences were to be wrested from their context and critically examined without regard to the entire charge. Before a single instruction should be held to be reversible error this court should be satisfied that not only was error committed but that the error was prejudicial to appellant's case. In the instant case it is admitted that rain was falling, and defendant's own witness testified that the driver of its stage had twice between Portland and the scene of the collision wiped the windshield with a tobacco sack. There was evidence that such was the common method. It was admitted that said stage had no windshield swipe. The language in the instruction under consideration "that no obstruction should be permitted to remain negligently upon the windshield which would render it impossible for him to see objects ahead" when considered in connection with the context would be considered very naturally to refer to moisture which would obscure, if not obstruct, the vision of the driver of the stage.

The court also explained to the jury that he meant by the word "obstruction" rain or moisture. There was no other kind of obstruction mentioned in connection with the trial. Giving of that instruction was not reversible error.

■ Appellant claims the court erred in giving the following instructions:

"Or, of course, if you find that although he did not have the lights, the defendant's driver saw him just the same, by reason of his own lights, why then, of course, the absence of a light would not justify the defendant's driver in running into collision with him. In other words, the absence of the light would constitute negligence upon his part, but it would not constitute, that is, it might not constitute, the proximate cause of the injury, provided the defendant's driver saw him in time to have avoided collision with him."

"Then, next, in regard to the tail-light: I said that if the plaintiff did not have a tail-light upon his truck, but if the defendant's driver saw the truck parked upon the highway ahead, and if he had a sufficient opportunity to avoid collision with it after he saw it, with the exercise of reasonable care, you can consider that upon the question as to whether or not the absence of the tail-light was the proximate cause of this accident. Whether or not it was the proximate cause of the accident is always a question for you to determine, and, of course, as I have said before, I have no right to intimate anything that is in my own mind, and I have nothing in my own mind as to what was the proximate cause of the accident. I was not instructing you that this or that was or was not the proximate cause of the accident."

This is designated as assignment of error No. 4. The same principle is involved in considering these instructions as that involved in the discussion of the absence of the white light. We think the court cor-

rectly stated the law in saying that if the driver of the defendant stage saw the truck standing on the paved portion of the highway in time to avoid a collision by the exercise of reasonable care, then defendant cannot acquit himself of negligence because there were no lights on the rear of the truck. If by the exercise of reasonable diligence defendant saw that truck, notwithstanding it was dark, in time to avoid the collision he is no more free from negligence than he would be if the collision occurred in broad daylight. The question was left to the jury as it properly should have been. The jury's verdict is binding upon the court: *Brown* v. *Oregon-W. R. & N. Co.*, 63 Or. 396 (128 Pac. 38); *Miami Quarry Co.* v. *Seaborg Packing Co.*, 103 Or. 362 (204 Pac. 492), are leading authorities bearing on proximate cause.

■ Defendant claims that the two instructions last set out are conflicting. We cannot concur in this view. As we read the instructions they express the same principle but in a little different form. The principle stated is the rule of law announced hereinabove as applied to the absence of a white light on plaintiff's truck. The court in instructing the jury on defendant's theory that there were no lights on the truck correctly stated the rule of law that while the plaintiff would be guilty of negligence if there were no tail-lights on his truck, such negligence would not prevent him from recovering, providing defendant's driver saw the truck standing on the highway in time to avoid a collision by the exercise of reasonable care. That instruction simply amounts to this: That plaintiff might recover notwithstanding he was guilty of negligence if his neglect did not contribute to the collision.

■ Another objection to the instructions is made by defendant on the ground that said instruction set out particular facts and thereby gave undue prominence to them. This objection is not well taken. It is the duty of the court to instruct the jury on every contested issue and to instruct with a view of presenting the theory of both the plaintiff and defendant of the case. We think that is all that was done by the court in the two instructions now under consideration. There was a sharp and well defined issue as to whether or not plaintiff's truck was rigged with tail-lights. Another consequent issue is, was the absence of tail-lights on plaintiff's truck, if they were absent, a contributing cause to plaintiff's injury? It was the duty of the court to instruct on such issues.

■ Assignment of error No. 5 is based on the court's refusal to give the following instruction requested by the defendant:

"It is undisputed in this case that the plaintiff's truck was more than six feet in width. Under the law of this state in force at the time of the accident it was the plaintiff's duty to exhibit during the hours of darkness a white light on the left side of his truck defining the limit of the body of the truck and beyond the outside thereof and so fixed that it might be seen both from the front and rear of said motor truck. It is admitted by the plaintiff that his truck was not equipped with such a white light and I charge you that in this particular the plaintiff was guilty of negligence as a matter of law and that if you find from the evidence that such negligence proximately contributed to the collision between plaintiff's truck and the motor bus of the defendant, it would prevent a recovery by the plaintiff."

The particular complaint made by defendant because of the court's refusal to give the last quoted

instruction is that the court added this language in giving its substance:

"I believe that he contends, however, that he had a red light in place of the white light."

It is conceded that the court gave the instruction substantially as requested, except for the modification just mentioned. The court had instructed the jury that the absence of the white light was negligence on the part of plaintiff. The remark of the court just quoted and complained of by defendant was not prejudicial. If the absence of that white light contributed to plaintiff's injury he could not recover and the court so instructed positively. The remark of the court last quoted was unnecessary, but we are unable to see in what way it could have been prejudicial. The real issue was, did the absence of the white light on the rear of the truck contribute to the collision? That was the question controverted in the evidence. Defendant contended all along that there were no lights there. Plaintiff testified that there were three red lights on the rear of the truck, one red light being in place of the white light required by law. Because the court charged the jury properly about plaintiff's negligence without that white light we do not think defendant's case could have been prejudiced to any degree by the remark complained of.

■ Assignment No. 6 is predicated on the court's ruling upon the following question propounded to plaintiff's witness Bon Fisher on redirect examination:

"Q. Mr. Fisher, have you been subpoenaed by the defendant in this case?

"A. I have not."

Defendant's assignment No. 7 is based on the ruling of the court in denying defendant's objection to the following question propounded to defendant's witness Lowell Davenport on cross-examination:

"Q. What kind of bus was the regular one that went right ahead of you the night of the 2nd of January?

"A. It was a chair car."

These questions and answers seem to the writer to be immaterial, but are not prejudicial to defendant's case.

■ One of the grounds upon which defendant depended for a new trial was the alleged misconduct of the jury. The alleged misconduct is based on the conduct of a juror, who is accused of paying more attention to what was going on in the courtroom in the audience than to the testimony. She is also accused of having expressed an opinion as to what should be the result of the case to other jurors while they were in the women's lavatory in the courthouse. Three affidavits were made by as many women who were in the lavatory at the time to the effect that this juror stated that she felt sorry for the plaintiff and so far as she was concerned he should have a verdict. These affidavits were traversed by said juror and also by three other lady jurors, who were in the lavatory at the same time. The jurors denied the specific statements alleged to have been made by said juror. The affidavits denying the charge against her, however, are not as complete nor as comprehensive as they should have been. There is no denial that the case was discussed to some extent; but simply a denial that the remarks charged to her were made. In our opinion the ladies who made the affidavits charging the offending juror with having made the remarks did

not manufacture "out of whole cloth" the allegations in their separate affidavits. The offending juror may not have made the particular remarks attributed to her. There must have been, however, some reference made to the case at the time. The extravagant verdict rendered reflects such a sentiment as is attributed in the affidavit to the offending juror. All jurors are carefully instructed by the presiding judge not to discuss the case among themselves or others until after the case has been submitted to them. From the affidavits submitted we believe that the case was discussed to some extent at least by the offending juror and the other jurors who were with her at the time.

■ The circuit judge should have granted a new trial. The entire record is before us. All the evidence introduced by both parties at the trial is here. We have the benefit of the jury's verdict to the effect that the plaintiff was not guilty of contributory negligence. That matter was fairly put up to the jury and decided in his favor. Defendant concedes that the evidence was sufficient to submit the question of its negligence to the jury. The only question then for us to determine is the amount of damages which should be allowed plaintiff. The actual expenses paid by plaintiff was $2,202, which, of course, should be allowed in full. Plaintiff was earning from $125 to $175 per month, the variance depending upon the number of trips the autotruck made between Corvallis and Portland. He was 24 years of age and we may reasonably assume that he would increase rather than diminish his earnings. At $175 per month his earnings in his life's expectancy would amount to $82,950. The present value of that amount is $42,082.25.

Something should be awarded for his suffering, which must have been intense, of long duration and is likely to continue to a degree as long as he lives. It is not at all likely, however, that plaintiff's earnings would have been continuous and steady at the maximum wage. There are many contingencies in life which prevent one who is working for wages from receiving the highest wage continuously.

There is no serious attempt on the part of defendant to question the seriousness of plaintiff's injuries or the permanency thereof. Dr. Vehrs saw the plaintiff about an hour after the collision and testified that he was unconscious; that he remained in a semi-unconscious state for a number of days; that he suffered hemorrhages from his ears, nose, mouth and in the back part of his eyes, rendering the white part of his eyes blue; he suffered a broken skull, a broken back, one vertebra having been comminuted. In addition to hemorrhages the serum from the brain flowed from his ears for several days, his spine was so injured that it was necessary to splice it by taking a bone about 10 inches long from plaintiff's leg; he was partially paralyzed in his limbs, completely paralyzed in his bowels and bladder; he suffered two hernias and otherwise was injured internally. Plaintiff also vomited frequently for two weeks immediately following the collision. He was confined to the hospital for 83 days.

Believing as we do, that this case should be determined by this court under authority of Constitution, Article VII, Section 3c, rather than remanded for a new trial to a jury, the judgment of the Circuit Court is reversed and the case is remanded with instruction to enter a judgment for plaintiff in the sum of $30,000.

*Had recovered 72,102 in lower court.*

Plaintiff will recover his costs and disbursements in both courts. REVERSED. REHEARING DENIED.

McBRIDE, J., did not participate in this decision.

ROSSMAN, J., having tried the case below did not participate.

BELT and RAND, JJ., concur in the result.