247 So.2d 875 (1971)
Dessard Joseph BADEAUX, Jr., Plaintiff-Appellant,
v.
PATTERSON TRUCK LINE, INC., et al., Defendants-Appellees, Appellants.
No. 3384A.
Court of Appeal of Louisiana, Third Circuit.
April 22, 1971.
Rehearing Denied May 26, 1971.
Writ Refused June 28, 1971.
*877 Johnson & Woods by L. Hallman Woods, New Iberia, for plaintiff-appellant.
Voorhies, Labbe, Fontenot, Leonard & McGlasson by W. Gerald Gaudet, Davidson, Meaux, Onebane & Donohoe by Timothy J. McNamara, Mouton, Champagne & Colomb by Patrick L. Colomb, Lafayette, Daniel L. Regard, Minos H. Armentor, New Iberia, O'Neal, Waitz & Henderson by Philip E. Henderson, Houma, for defendants-appellees.
Before FRUGÉ, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
The cases of Dessard Joseph Badeaux, Jr. v. Patterson Truck Line, Inc. et al. and Bonnie Marie Myers Hebert et al. v. Patterson Truck Line, Inc., et al were consolidated for trial with a third case, Paul Wilson *878 Girard v. Patterson Truck Line, Inc., et al. In each of those suits the plaintiff sought recovery from Patterson Truck Line, Inc. and the City of New Iberia, Louisiana, as well as from their respective insurers, Aetna Casualty & Surety Company and Highlands Insurance Company, alleging that the joint negligence of the principal defendants produced the injuries complained of. Patterson Truck Line, Inc. and its insurer filed third party demands against the City of New Iberia, Louisiana, Paul Wilson Girard, and his employer Rex Truck Lines, Inc. in the Badeaux and Hebert cases, and against the City of New Iberia in the Girard case. The Highlands Insurance Company filed third party demands against Patterson Truck Line, Inc. and Rex Truck Line, Inc. in the Badeaux and Hebert cases, and in the Girard case it filed third party demands against Patterson Truck Line, Inc. and Aetna Casualty & Surety Company and reconventional demands against Paul Wilson Girard. All of the incidental actions involved prayers for contribution and/or indemnity should the plaintiffs therein be held liable to the principal plaintiffs. Finally the Security Insurance Company intervened in each of the three principal actions seeking restitution of workmen's compensation benefits paid by it to or on behalf of the plaintiffs in its capacity as the workmen's compensation insurer of Rex Truck Lines, Inc. Following a trial on the merits the district judge rendered judgment in favor of all defendants and against all plaintiffs dismissing all principal and incidental actions with prejudice. Plaintiffs Badeaux and Hebert have appealed that judgment and third party plaintiffs Patterson Truck Line, Inc. and Aetna Casualty & Surety Company have appealed the dismissal of their third party demands in the event the other appellants should prevail in this court. Girard did not appeal and he is therefore before us only in his capacity as a third party defendant in the Badeaux and Hebert cases.
We decide both the case of Dessard Joseph Badeaux v. Patterson Truck Line, Inc. et al. and Bonnie Marie Myers Hebert et al. v. Patterson Truck Line, Inc. et al. this date. The facts and law common to both are set out herein and those peculiar to the Hebert case are set out in a separate opinion rendered in the case of Hebert et al. v. Patterson Truck Line, Inc. et al., 247 So.2d 886. Also see the latter of our judgment therein.
The dispute arose as a result of a collision which occurred shortly after 4:00 A. M. on January 17, 1968, during the hours of darkness, when a truck owned by Rex Truck Lines, Inc. and being driven by its employee, Paul Wilson Girard, struck the rear end of a truck owned by Patterson Truck Line, Inc. and operated by their employee, Tommy Pearson. At the time the Pearson truck was stopped in the right lane of the westbound lanes of Admiral Doyle Drive. That highway, at the point of impact, is a four lane highway with two lanes running in an easterly direction and two lanes running in a westerly direction. There is a neutral ground separating the opposing lanes and those running westward each measure 12 feet, and are bounded on the north by a 10-foot improved shoulder. The accident occurred at a point approximately one and three-tenths miles from the site of a garbage dump maintained by the City of New Iberia on the fringes of Spanish Lake.
Earlier that morning Tommy Pearson and a fellow employee, Norman Belanger, left Houma, Louisiana, each driving a truck belonging to Patterson Truck Line, Inc. The two trucks were identical, of the tractor trailer type, and each measured some 48 feet in length and eight feet in width. Both were loaded with oilfield equipment which was to be delivered in Lake Charles, Louisiana with Pearson's truck carrying a piece of equipment known as a "shell shaker". Driving conditions generally were described as ideal that morning as the two Patterson drivers proceeded with Belanger in front and Pearson behind him, until they were west of New Iberia on Admiral Doyle Drive. There *879 they ran into two small patches of fog, which they drove through easily, but a third area of fog or smog proved not to be so harmless.
Belanger, as driver of the lead truck, entered the smog first and found visibility therein to be nil. He testified that the density of the smog permitted him to proceed only by looking out of his side window and following the white line dividing the two lanes. He drove in this manner at a speed of some five miles per hour for a distance estimated by him to be five-tenths to six-tenths of a mile, whereupon he stopped behind two automobiles which had stopped on the road before him. His testimony was that he barely saw the tail lights of these automobiles as he approached them and was able to stop only a short distance behind the rear vehicle. After he had stopped, a motorist named Willie Brooks, who had pulled onto the shoulder of the road, drove his automobile back onto the road and parked it behind Belanger's truck.
Pearson testified that he lost sight of Belanger's truck immediately upon its entering the smog bank and that when he entered it he also slowed his speed to approximately five miles per hour. He had proceeded at this speed for about one-half mile when he noticed the dim reflection of Belanger's lights surrounding a dark shadow. Realizing that the shadow was an automobile, he brought his truck to a stop just two or three feet behind the Brooks vehicle. He remained in his truck a short time, estimated by him to be from 10 to 15 seconds, and then walked up to Belanger's truck to consult with him as to what their course of action should be. They determined that the two trucks should be removed from the travelled portion of the highway and in pursuance of this plan Pearson and Brooks took up positions to guide Belanger onto the shoulder, as the smog made it impossible to see the shoulder or adjoining ditch from Belanger's position in his truck. With the directional aid of his comrade and Brooks, Belanger backed his truck a short distance and then drove it off the highway. Having accomplished this, the three men were walking toward Pearson's truck to deal with it in a similar fashion when a crash was heard. Investigation revealed that the Rex truck had struck the left rear of the Pearson truck with its own right front. The driver of the Rex truck, Girard, and one of his passengers Dessard J. Badeaux, were injured and a second passenger, Earl Joseph Hebert, was killed. As a result, suits were filed by Girard, Badeaux, and the widow of Hebert, thus initiating the above described litigation.
The City of New Iberia and its insurer, Highlands Insurance Company, were made defendants under allegations by plaintiffs that the city permitted fires to burn uncontrolled in its aforementioned garbage dump and that the smoke emitting therefrom was a causative factor of the accident in that it impaired visibility at the scene thereof.
With regard to the issue of negligence on the part of the City of New Iberia, we have no difficulty in affirming the judgment of the trial judge, and furthermore we find his views on this point to be so well expressed in his reasons for judgment that we deem it fitting to adopt his words as our own. He wrote thusly:
"A review of the record reflects that the plaintiff's asserted claim against the City of New Iberia is patently without merit. Certainly the City cannot be faulted for maintaining a garbage dump in proximity to highways in and around said municipality nor could such municipality be faulted for intentionally burning trash and garbage in its dump since this is a recognized method of garbage disposal. The record reflects in reference to the last stated particular that this City does not set fires to dispose of garbage but unlike many other municipalities its size uses the land fill method. The record does reveal that from time to time smoke emits from the city garbage dump, however, this is caused not by fire intentionally set by city employees but *880 rather by spontaneous combustion. There is no merit to plaintiff's contention that the City and its employees allowed trash and garbage to burn out of control, rather the record reflects that when due to spontaneous combustion underground fires were started and smoke began to emit from the cracks in the porous surface of the dump that the City was diligent in its efforts, weather and other conditions permitting, to stamp out the fires.
Finally, it should be mentioned that the evidence does not substantiate plaintiff's last contention that the City was aware of a hazardous situation and failed to warn motorists.
Plaintiff's asserted claim against the City of New Iberia is markedly similar to a claim made in a like situation against the Parish of Jefferson in the case of Bonilla vs. Arrow Food Distributors, Inc., et al [La.App.] 202 So.2d 438 (4th Cir. July 1967). In the cited case the facts were that the Parish of Jefferson intentionally set fires in its dump to dispose of trash and had done so on the day previous to the accident. In rejecting the plaintiff's claim against that governmental body the court said:
'There is no evidence in the record to establish weather conditions, humidity or whatever factors, if any, which should have been known or considered before lighting a fire the previous day, or making necessary steps to extinguish the fire lit the day before. The record is completely devoid of any evidence of negligence on the part of the Parish of [sic] its employees.'
"Likewise, in the instant case there was no evidence presented of peculiar weather conditions which were known or should have been known by the City which would have indicated smoke emitting from the dump would cause a hazardous condition."
Accordingly, the trial court was quite correct in dismissing plaintiff's suit against the City of New Iberia and Highlands Insurance Company. The dismissal of plaintiff's suit against Patterson Truck Line, Inc., and its insurer is, however, another matter.
LSA-R.S. 32:367 requires that vehicles of the type Pearson was driving, operated on the highways of this state between sunset and sunrise, be equipped with at least three flares, three red electric lanterns, or three portable red emergency reflectors, each of which must be visible at a distance of not less than 600 feet under normal atmospheric conditions at night time. In this connection we note that although Pearson checked to see that a safety box supposedly containing the required flares or fusees was in his truck prior to commencing his journey, he never looked inside the box to ascertain whether in fact they were there.
The circumstances and manner in which the said warning devices are to be employed are set out in LSA-R.S. 32:368. We quote only those portions of the statute relevant to this case.
"A. Whenever any freight carrying vehicle, passenger bus, truck tractor, trailer, semi-trailer, or any motor vehicle pulling a house trailer or other vehicle, is disabled upon the traveled portion of any highway of this state, or the shoulder thereof, at any time when lighted lamps are required on vehicles, the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in Subsection B of this Section:
(1) A lighted fuse, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.
(2) As soon thereafter as possible, but in any event within the burning period of the fuse (15 minutes), the driver shall place three liquid burning flares (put *881 torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:
(a) One, approximately 100 feet from the disabled vehicle in the center of the lane occupied by such vehicle and toward traffic approaching in that lane.
(b) One, approximately 100 feet in the opposite direction from the disabled vehicle and in the center of the traffic lane occupied by such vehicle.
(c) One at the traffic side of the disabled vehicle approximately 10 feet rearward or forward thereof in the direction of the nearest approaching traffic.
B. Whenever any vehicle referred to in this Section is disabled within 500 feet of a curve, hillcrest or other obstruction to view, the warning signal in that direction shall be placed as to afford ample warning to other users of the highway, but in no case less than 100 feet nor more than 500 feet from the disabled vehicle.
C. Whenever any vehicle of a type referred to in this Section is disabled upon any roadway of a divided highway of the state during the time that lights are required, the appropriate warning devices prescribed in Sub-sections A and E of this Section shall be placed as follows:
(1) One at a distance of approximately 200 feet from the vehicle in the center of the lane occupied by the stopped vehicle and in the direction of traffic approaching in that lane;
(2) One at a distance of approximately 100 feet from the vehicle in the center of the lane occupied by the vehicle and in the direction of traffic approaching in that lane;
(3) One at the traffic side of the vehicle and approximately 10 feet from the vehicle in the direction of the nearest approaching traffic."
The question that arises, of course, is whether the Pearson truck was disabled for purposes of this statute. We think that it was. Although the popular definition of a disabled vehicle involves mechanical failure, it need not be so limited, and disability may also result from the influence of external phenomena. Certainly when such influence is so intense as to prevent the movement of a vehicle, that vehicle is just as disabled as one which cannot move due to mechanical failure. This is particularly the case for purposes of LSA-R.S. 32:368 which is a safety statute designed to protect other motorists on the highway. It is obvious that a vehicle stopped on the traveled portion of a highway because of external forces which prevent its removal is an equal danger to other motorists as one so stopped because mechanical failure prevents its removal, and the effects of a crash with one or the other would not differ in any respect. Although we find no Louisiana cases on this point, other jurisdictions have given support to our view. Thus the Supreme Court of Oregon, in considering a statute not unsimilar to our own, gave as an example of a disabled automobile one whose lights were suddenly extinguished on a mountain road at night. True, this was a failure of the equipment of the vehicle and not one due to an external cause, but its only effects were to prevent the driver of the automobile from seeing where he was going and even more importantly, to make it difficult for other motorists to see the lightless vehicle. Under these circumstances the automobile was considered disabled for purposes of the statute. Martin v. Oregon Stages, 129 Or. 435, 277 P. 291.
We have an analogous situation in the case at bar. Here the lights of the truck were not extinguished, but the conditions of the atmosphere made it impossible for the driver to see where he was going and they made it extremely difficult for other motorists to see the stopped truck. The testimony of both Pearson and Belanger was that they could drive their trucks only *882 by looking out of their side windows and following the white line of the highway. They both indicated that in spite of their snail-like pace of five miles per hour, they were barely able to bring their trucks to a halt before striking the vehicles stopped before them. A state trooper testified that in traveling on the eastbound lanes to reach the accident, he would have passed it up completely were it not for flashlight signals given him by a deputy sheriff already on the scene, as it was impossible to see across the highway. He also stated that he could not see his partner standing but three feet from him, and that he walked into the ditch adjoining the shoulder because he could not see it. All of the other testimony concerning the density of the smog and consequent lack of visibility therein was to the same effect.
Further compounding the obscurity of Pearson's truck was the shell shaker located on the rear of his trailer. This shell shaker was in the form of a small building, nearly eight feet in width and high enough for a man to walk into. Its size was such that it completely blocked all of the cab lights from the view of a motorist approaching from the rear. Thus such a motorist would have only those lights located along the back end of the flat-bed trailer to warn him of the truck's presence.
LSA-R.S. 32:368 is a mandatory statute and gives those coming within its purview no choice as to whether they should comply with its terms. Hogan v. Travelers Insurance Co., La.App., 211 So. 2d 704. Having found it to be applicable, therefore, we also find that Pearson was guilty of negligence per se in failing to obey it. Womax v. Earl Gibbon Transport, Inc., La.App. 226 So.2d 573.
Furthermore we are of the opinion that even had there been no statute which was applicable to the facts of this case, Pearson would have been guilty of negligence. He was, by his own testimony, fully aware of the danger that his truck presented to overtaking motorists. Yet he chose to leave his truck parked on the traveled portion of the highway, in an extremely dense blanket of smog, without putting out any flares or other warnings to overtaking traffic, while he conversed with the forward driver and aided him in removing his vehicle from the highway. The testimony of both Pearson and Belanger was to the effect that only one and one-half to two minutes elapsed from the time Pearson stopped his truck to the time of the collision. We are not convinced that such was the fact, especially in view of Brooks' estimate in a statement given before trial that it was closer to 15 or 20 minutes. At trial Brooks, after hearing the drivers' estimates of the elapsed time, changed his version to comply with theirs. He offered as his only reason for the change that he had concluded, since observing the trial, that had it been as long as he originally estimated, Pearson would have had time to remove his truck from the highway. We agree with his reason but are not satisfied with his reliance upon it as a basis for reducing his estimate of the time elapsed so drastically. Further we note Pearson's testimony that he had made a stop earlier for the purpose of adjusting the bindings on his cargo, the duration of which he estimated to be from five to 10 minutes. He could estimate this period of time only to within five minutes, yet he could come within one half minute of the time elapsed when the accident occurred. Be that as it may, Pearson's testimony was that it would have taken him but 15 or 20 seconds to set out a flare at a distance of one hundred feet behind his truck. While here again he seems to us to be underestimating the time element, to so set out a flare was his first duty, and his failure to do so, especially in view of the magnitude of the danger to human life that was present, constitutes negligence of the grossest kind. See Womax v. Earl Gibbon Transport, Inc., supra; Hogan v. Travelers Insurance Co., supra; Gaines v. Hardware Mutual Casualty Co., La.App., 86 So.2d 218.
The trial judge concluded that even if Pearson was guilty of negligence, his negligence *883 was not a proximate cause of the accident. We think in doing so he committed an error of law.
Girard, driver of the Rex truck, admitted to driving into the smog bank at a speed of thirty-five miles per hour and also that he never applied his brakes prior to the collision. We agree with the trial judge in his finding that Girard was negligent in so doing. We also concur in his rejection of Girard's testimony to the effect that he came upon Pearson's truck immediately upon entering the smog bank. All of the other testimony in the case convinces us that the accident occurred at least 150 yards into the area of thick smog. However, Girard went on to testify that had there been an additional three feet of maneuvering space he could have missed the Pearson truck by swerving, as he attempted to do, to his left, and also that if he had been given a warning at a distance of 100 feet, he could have stopped his truck. The former is perhaps an exaggeration and he may have hit the truck, even with the additional three feet, but the latter opinion seems to us to be perfectly plausible. In this regard we note that although Girard was approaching in the same lane that Pearson was stopped on, the photographs contained in the record show that the left side of Girard's truck suffered no impact. This is corroborative of Girard's testimony that he swerved to his left in attempting to avoid the accident and, considering that the truck was roughly eight feet wide, proof that had Girard swerved 100 feet further back he would have avoided the collision. Under these circumstances Pearson's negligence in failing to provide the additional 100 feet was certainly a proximate cause of the accident. (Compliance with the statute would have provided 200 feet.) It is therefore our opinion that both Girard and Pearson were guilty of negligence proximately causing the accident.
The trial judge mentioned the doctrine of "sudden emergency" as a possible excuse for Pearson's conduct. We do not consider it applicable to the facts of this case for two reasons. First, that doctrine contemplates a lack of time in which to make a proper decision as to what should be done. In this case, even by Pearson's testimony, a minimum of one and one-half minutes elapsed from the appearance of the emergency to the occurrence of the accident. Pearson had time to walk up to Belanger's cab and ask what should be done, and to move the latter's truck off the highway. We see no suddenness here. Second, the doctrine contemplates making a decision, and in the case at bar Pearson was not permitted that luxury by a mandatory statute that prescribed what his course of action should be. "Sudden emergency" then, is of no avail to defendants.
The question of contributory negligence on the part of plaintiffs Badeaux and Hebert, passengers in the Girard truck, has arisen, but we think there was none. Contributory negligence being an affirmative defense, it is incumbent upon the defendants to prove it by a preponderance of the evidence. King v. King, 253 La. 270, 217 So.2d 395. The law on contributory negligence of guest passengers was well set out by our Supreme Court in White v. State Farm Mutual Automobile Insurance Co., 222 La. 994, 64 So.2d 245 as follows:
"* * * a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden or unexpected dangers that may arise. Albeit, he has the right to place reliance upon the driver to discharge that obligation and, as aptly expressed by the Court of Appeal, Second Circuit, in Singley v. Thomas, 49 So.2d 465, 469 `* * * is not required to monitor the operation or to pay attention to the road and other traffic conditions' in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle. * * *" *884 Of course the passenger is required to warn the driver of dangers known to him and apparently unknown to the driver, and to protest or try to stop obviously negligent acts of the driver.
The testimony on how far into the smog bank Girard had driven before the accident varies from 50 feet to about half a mile, with Girard making the lowest estimate and the Patterson drivers making the highest. In between were a state trooper who estimated two tenths of a mile and a deputy sheriff who said 150 yards. Although we are inclined toward acceptance of a distance somewhere between the estimates of the deputy and the trooper since they were the only disinterested witnesses who testified on this point, it makes little difference which estimate is correct since in any event Girard's truck was in the smog for less than one minute before the collision. We conclude this from the fact that he was driving at a speed of at least 35 miles per hour.
Badeaux and Hebert were young (23 and 22, respectively) swampers, or truck helpers, riding in a truck driven by an older and supposedly experienced truck driver. The only evidence regarding their actions immediately prior to the accident was testimony to the effect that they were engaged in conversation. Badeaux stated that he was looking at Hebert, and not paying attention to the progress of their vehicle. Under these circumstances it would be pure conjecture for us to say that they noticed the density of the surrounding smog while conversing with one another during the seconds that they were in it, as defendants have offered no proof that they did. The burden of proof, as aforesaid, was on defendants, and they have not carried their burden. Hence we conclude that Badeaux and Hebert were not guilty of contributory negligence.
Having concluded that the accident resulted from the concurrent negligence of Pearson and Girard and that Badeaux and Hebert were free from contributory negligence, we turn now to the issue of quantum as it pertains to plaintiff Badeaux.
In the accident, Dessard Joseph Badeaux, Jr. suffered minor cuts of the scalp and one hand, sprains of both ankles, a contusion in the right chest, and a probable ligament sprain in the right knee. He was taken to Dauterive Hospital in New Iberia, Louisiana where the lacerations were sutured by his own physician, Dr. Roy L. Landry, and he was released. At the request of his employer he was then taken to the Iberia Parish Hospital where he was hospitalized for observation. On January 22, 1968 he was able to ambulate with the aid of crutches and he was discharged from the hospital. Thereafter he was treated by Dr. Landry and examined by a number of other physicians, including orthopaedic specialists, in New Iberia, Lafayette, and New Orleans. Suffice it to say that none of these could find any significant pathology or residual disability in the patient and that his treating physician discharged him as cured and able to resume work on April 22, 1968.
Nevertheless Badeaux continued to complain of pain, especially in his ankles, up to and including the time of trial in December of 1969. He admitted, however, that he had been working as a roofer for some seven or eight months preceding the trial and that before that he was engaged in doing mechanical repairs on automobiles that he would purchase for resale. The nature of his work as a roofer necessitated his climbing ladders and walking on tilted surfaces, and his ability to perform these functions induces us to agree with the apparent opinion of at least two physicians, that he was exaggerating his complaints. Under these circumstances we deem it proper to accept the date of April 22, 1968, given by his treating physician as the termination date of his disability. Accordingly we will award him lost wages for fourteen weeks at $69.45 per week, his average earnings prior to the accident, or $972.30.
Mr. Badeaux's medical and drug bills, as shown by the record, amount to $1200.26, *885 of which a substantial portion represents charges for evaluations by various physicians rather than treatment. While this seems to be a large sum under the circumstances, no objection was made to the introduction of these bills and we therefore award plaintiff the entire amount.
Finally for his pain, suffering and temporary disability, we think plaintiff Badeaux is entitled to the sum of $1500.00.
Intervenor, Security Insurance Company, paid medical and drug bills on behalf of Badeaux in the sum of $999.96. It also paid Badeaux a total of $1295.00 in workmen's compensation payments. Therefore, and in accordance with its petition, intervenor is entitled to judgment against Patterson Truck Line, Inc., the Aetna Casualty & Surety Company, and Dessard Joseph Badeaux, Jr., in the amount of $2,294.96 and relieving it of liability under the Workmen's Compensation Act to Badeaux up to the sum of $3,672.56 including the aforementioned sum already paid to him. LSA-R.S. 23:1101-1103. The fact of Girard's negligence is not a bar to intervener's recovery. Vidrine v. Michigan Millers Mutual Ins. Co., La.App., 242 So.2d 249.
The third party demands of Patterson Truck Line, Inc. and Aetna Casualty & Surety Company against Rex Truck Lines, Inc. must be denied due to the exclusive nature of the Workmen's Compensation remedy. LSA-R.S. 23:1032. Thus an employer cannot be held for indemnification or contribution by a third party tortfeasor when the injured plaintiff is an employee covered by Workmen's Compensation Insurance. Bagwell v. South Louisiana Electric Co-op. Association, La.App., 228 So.2d 555; Hebert v. Blankenship, La.App., 187 So.2d 798. Their third party demands against the City of New Iberia must likewise be dismissed since we have found the city to be free from liability in this case. However, their third party demands against Paul Wilson Girard will be allowed, as we have found him to be guilty of negligence which was a proximate cause of the accident. An employee who negligently injures a fellow employee is responsible in tort, although their common employer be immune to suit outside of the Workmen's Compensation Act. LSA-R.S. 23:1101; Pflieger v. Haws, La.App., 180 So.2d 892; writ refused, 248 La. 908, 182 So.2d 661; Daigle v. Cobb, La.App., 175 So.2d 392, writ refused, 248 La. 363, 178 So.2d 655. Girard then, must be held to be liable for contribution to Patterson and Aetna of one-half of any judgment rendered against them.
For the foregoing reasons, the judgment of the trial court, insofar as it dismissed plaintiff's suit against Patterson Truck Line, Inc. and the Aetna Casualty & Surety Company, the suit of intervenor, Security Insurance Company, and the third party demands of Patterson Truck Line, Inc. and Aetna Casualty & Surety Company against Paul Wilson Girard, is reversed; and it is now;
Ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Dessard Joseph Badeaux, Jr. and intervenor, Security Insurance Company and against defendants Patterson Truck Line, Inc. and Aetna Casualty & Surety Company, jointly and in solido, for the sum of $3,672.56 with legal interest from date of judicial demand, and for all costs in this and in the District Court; and that out of such amount the Security Insurance Company shall receive the sum of $2,294.96, paid by it to and on behalf of the said Dessard Joseph Badeaux, Jr. together with legal interest thereon from date of judicial demand and all costs of its intervention; and the balance of said amount shall be paid to and be received by plaintiff, Dessard Joseph Badeaux, Jr.;
It is further ordered, adjudged and decreed that intervenor, Security Insurance Company be relieved of its obligation under the Workmen's Compensation Law to *886 the plaintiff Dessard Joseph Badeaux, Jr. to the extent of $3,672.56, including the sums it has already paid to and on behalf of the said plaintiff, Dessard Joseph Badeaux, Jr.;
It is further ordered, adjudged and decreed that there be judgment in favor of third party plaintiffs Patterson Truck Line, Inc. and the Aetna Casualty & Surety Company, and against third party defendant, Paul Wilson Girard for one-half of the principal sum, interest and costs for which the said third party plaintiffs have herein been cast.
In all other particulars the judgment of the trial court is affirmed.
Affirmed in part, reversed in part and rendered.

On Application for Rehearing
PER CURIAM.
In applying for a rehearing, counsel for defendants argues vehemently that this court erred in applying R.S. 32:368 to the case at bar. It is his contention that R.S. 32:141 is, instead, the applicable statute and that Pearson was in full compliance with the terms of that statute. We reject his argument on both counts, but consider it fitting to state our reasons.
We have reviewed R.S. 32:141 and find the relevant portion of that statute to be as follows:
"B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic." (Emphasis ours.)
By its own terms then, the statute does not apply to disabled vehicles.
The Orleans Court of Appeal had occasion to consider a predecessor statute, Act 21 of 1932, Sec. 3, Rule 15, which, in substance, was not unlike R.S. 32:141. Judge Janvier, as organ of the court, stated that the statute had no application to a disabled vehicle "* * * and we see no difference, so far as the statute is concerned, between a vehicle disabled in that it cannot move under its own power and a vehicle which it would be dangerous to move because of surrounding circumstances." Beach v. Union Brewing Corp., La.App., 187 So. 332.
With regard to counsel's second point, it is plain from our discussion of the facts of this case, contained in our original opinion, that Pearson did not comply with the emphasized portion of the statute as quoted above. He failed in his responsibility to protect traffic until he could remove his vehicle from the highway.
The other points raised by applicants are adequately treated in our original opinion.
Accordingly the application for rehearing is denied.
Denied.