402 So.2d 129 (1981)
Emily Deen NELSON
v.
Robert POWERS, Jr., Willie J. Mouton, Affiliated Foods, Incorporated, United States Fidelity and Guaranty Company, Highlands Insurance Company, Christopher C. Watkins, Greyhound Lines, Incorporated, Floy Lee Fudge, Jr., and Slaughter Transport Corporation.
No. 13891.
Court of Appeal of Louisiana, First Circuit.
June 29, 1981.
Rehearing Denied August 25, 1981.
*131 James A. George, George & George, Ltd., Baton Rouge, for plaintiff-appellant/appellee Emily Deen Nelson.
Frank M. Coates, Jr. of Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-appellee Highlands Ins. Co.
Anthony J. Clesi, Jr. of Lane & Clesi, Baton Rouge, for defendants-appellees Affiliated Foods, Inc., Willie J. Mouton and U. S. Fidelity and Guaranty Co.
David W. Robinson of Watson, Blanche, Wilson & Posner, Baton Rouge, for defendants-appellants/appellees Floy Lee Fudge, Jr. and Slaughter Transport Corp.
Carey J. Guglelmo of Dale, Owen, Richardson, Taylor & Matthews, Baton Rouge, for defendants-appellees Greyhound Lines, Inc. and Christopher C. Watkins.
Arthur Neal Bagwell, White Castle, for defendant-appellee Robert Powers, Jr.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This personal injury and wrongful death suit arises out of a 1977 rear-end collision on the elevated portion of Interstate 10 in the Atchafalaya Basin in Iberville Parish, Louisiana. From a jury judgment in favor of the plaintiff, Emily Deen Nelson, and against two of the defendants, the plaintiff brings this appeal. She contends principally that the jury should have held two of the other defendants liable for the $1.1 million award. Those two defendants took protective appeals to preserve their rights in the event the judgment in their favor is reversed.[1]
In the pre-dawn hours of August 22, 1977, Floy Lee Fudge, Jr. driving an 18-wheeler for Slaughter Transport Corporation, pulled his rig onto I-10 at Lafayette, Louisiana. As Fudge travelled eastbound 1-10 towards Baton Rouge, he received communications over his CB radio that an apparently drunken driver, Robert Powers, Jr., had managed to enter the eastbound lanes of 1-10 in the wrong direction. Fudge began radio communications with another 18-wheel driver, the identity of whom has never been discovered. This unidentified driver was called "Truck X" at trial and will be so identified herein.
*132 Fudge and Truck X, realizing that the drunken Powers was heading their way in the wrong direction, travelled side by side on the interstate in an effort to stop the Powers vehicle, prevent it from causing an accident and get it turned around. About three miles east of Whiskey Bay, the two truckers began to converge on Powers' Thunderbird. They slowed as Powers approached, and finally brought the trucks to a stop, blocking both lanes of the interstate highway. Fudge turned on his spotlight as Powers approached, and Powers finally stopped his car about six inches in front of Fudge's truck. Fudge testified he flipped his emergency flashers on before he stopped. After stopping he alighted from his cab and slid across the hood of Powers' T-Bird where the driver of Truck X was already talking to Powers.
As these actions were transpiring, a Greyhound bus driven by Christopher Watkins and heading eastbound on 1-10 pulled to a stop behind Fudge. Watkins testified that he also switched the bus' emergency lights on before he stopped. Immediately behind the bus was the plaintiff's pickup truck, driven by Mrs. Nelson and occupied by her husband, Gilman Howard Nelson. The plaintiff stopped her truck behind the Greyhound bus. While this string of vehicles rippled to a stop on the highway, and while Fudge and the driver of Truck X were attempting to turn Powers around, another 18-wheeler driven by Willie J. Mouton for Affiliated Foods, Inc. smashed into the rear of the plaintiff's pickup at a speed of 45 to 68 miles per hour. The impact crumpled the plaintiff's pickup, sandwiching it between Mouton's 18-wheeler and the bus. Mr. Nelson was killed instantly and Mrs. Nelson was severely injured. Evidence at trial revealed that from the time Fudge and Truck X stopped until the time the accident occurred, anywhere from 1¾ to 5 minutes elapsed.
Mrs. Nelson brought this suit against Powers, who was imprisoned and impecunious at the time of trial; Mouton and Affiliated Foods, Inc.; United States Fidelity and Guaranty Company (USF&G), the insurer of the Affiliated Foods truck; Highlands Insurance Company, the excess insurer of the Affiliated Foods truck, Watkins and Greyhound Lines, Inc.; and Fudge and Slaughter Transport Company (Slaughter).
Fudge and Slaughter filed third party demands against the other defendants, and Greyhound filed an intervention seeking damages for repairs and loss of the use of the bus. A number of exceptions were also filed, none of which is pertinent on appeal.
Prior to trial, the plaintiff settled with all of the defendants except Powers, Fudge and Slaughter Transport.[2]
At the trial, which was held before a jury, the negligence vel non of all drivers was submitted to the jury on interrogatories. The jury concluded that Mouton and Powers were negligent but that Watkins and Fudge were not. For the wrongful death of Mrs. Nelson's husband, the jury awarded $300,000.00; for Mrs. Nelson's own injuries, the jury awarded $800,000.00. Because Mouton, who through his employer was the only pecunious defendant found negligent by the jury, had already settled with the plaintiff, the total of her award was the amount for which she settled. All other claims were dismissed by the court.

SPECIFICATIONS OF ERROR
The plaintiff contends on appeal that the jury erred in finding Fudge not negligent. Primarily, she claims Fudge was under a statutory duty to refrain from stopping and to warn other drivers under the provisions of La.R.S. 32:141[3] and La.R.S. 32:368.[4] She also complains of "faulty and inadequate jury instructions."

*133 NEGLIGENCE: LA.R.S. 32:368
La.R.S. 32:368 imposes a duty upon drivers of "disabled" trucks and certain other vehicles to display warning devices during periods of low visibility when the vehicle is disabled on the travelled or shoulder *134 portion of the highway. The statute is a safety measure designed to protect life and property on the highways by providing some type of warning signals to motorists approaching disabled vehicles. Sutton v. Langley, 330 So.2d 321 (La.App. 2nd Cir. 1976), writ denied, 333 So.2d 242, cert, denied, 332 So.2d 805, 820 (La.1976).
The key to the determination of the applicability of La.R.S. 32:368 to this case is the meaning of the term "disabled." Fudge and Slaughter maintain that the 18-wheeler driven by Fudge was not disabled within the purview of the statute. In Badeaux v. Patterson Truck Line, Inc., 247 So.2d 875 (La.App. 3rd Cir. 1971), writ refused 259 La. 77, 249 So.2d 209 (1971), our brethren on the Third Circuit held that the definition of the word "disabled" need not be limited to circumstances involving mechanical failure. Disability may also result from the "influence of external phenomena." 247 So.2d at 881. "Certainly when such influence is so intense as to prevent the movement of a vehicle, that vehicle is just as disabled as one which cannot move due to mechanical failure." Id.
In Badeaux, a thick blanket of smog which made the road impossible to see was held to be an "external phenomena" sufficient to disable a truck whose driver had stopped on the travelled portion of the highway. The court noted that even though the lights on the truck were on and functioning, "the conditions of the atmosphere... made it extremely difficult for other motorists to see the stopped truck." Id. Other factors also obscured the visibility of the parked truck, and the testimony indicated that the driver had ample time to place warning devices.
Fudge and Slaughter contend that the existence of another vehicle on the highway is not such an "external phenomena" as to render the Fudge truck disabled under the Badeaux interpretation. Although the presence of a vehicle travelling the wrong way on a high speed highway is indeed unusual and is perhaps a phenomenon, we think the Third Circuit decision contemplates a condition or phenomenon of such duration and intensity that more than a temporary stop is required. The facts and circumstances of each case will, of course, be controlling as to whether a stop is temporary. If La.R.S. 32:368 were interpreted to require the placement of warning devices for every temporary obstruction or condition that forces a truck driver to come to a stop, the consequences would be absurd. We agree with the Third Circuit that some atmospheric conditions, like the smog in that case and like heavy fog or rain in other situations, can be sufficiently intense to "disable" vehicles within the meaning of La.R.S. 32:368. If the condition or phenomenon requires more than a temporary stop or if the intensity of the condition seriously impedes or obstructs the vision of other motorists, a driver subject to the provisions of La.R.S. 32:368 must set out the prescribed warning devices if he stops.
In the case at bar, the Slaughter truck experienced no mechanical difficulties and the stop was only temporary in nature. The atmospheric conditions were clear and dry, and the night time visibility was good. Fudge activated his emergency flashers before stopping, and the flashers were easily observed by the Greyhound driver who also turned his flashers on to warn the plaintiff and others behind her. We hold, therefore, that the Slaughter truck was not "disabled" within the meaning of La.R.S. 32:368.
Even if we assume, for the sake of argument, that Fudge's truck was "disabled" under the terms of La.R.S. 32:368, his failure to place the warning devices cannot be said to be the legal cause of the accident that resulted in this case. In other words, if Fudge breached his duty to warn under the statute, the breach of that duty was not the legal cause of the injury which befell the plaintiff. From the evidence in the record, we are of the opinion that Mouton possibly could not and probably would not have seen or heeded the devices prescribed *135 by La.R.S. 32:368 any more than he saw or heeded the emergency flashers on the Greyhound bus. See Liberty Mutual Insurance Company v. Allstate Insurance Company, 220 So.2d 182 (La.App. 1st Cir. 1969). Mouton admitted seeing emergency flashers in the right lane of traffic where Truck X had stopped but he did not slow down because he figured the left lane was clear. The preponderance of the evidence at trial reveals that the emergency flashers on the Greyhound bus were on, working and visible. Mouton simply failed to see them. His negligence, along with the negligence of Powers, formed the legal cause of this tragedy.

NEGLIGENCE: 32:141
Under La.R.S. 32:141(A) no vehicle may be left standing upon the travelled part of a highway "when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway." Subsection C of the statute provides that any vehicle left parked on the highway at night "shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence." La.R.S. 32:141(C).
The peculiar circumstances confronting Fudge in the early morning hours of August 22, 1977 made it impossible for him to stop his truck off the travelled part of 1-10. His laudable purpose was to stop a drunken driver. The means which materialized for him to accomplish this purpose was the appearance of another 18-wheel driver who, together with Fudge, effectively blocked Powers' path. Just as Fudge could not pull off the travelled part of the highway, he likewise could not leave an unobstructed width of the highway opposite his truck open to traffic because Truck X was in the opposite lane. The crystal clear vision of hindsight shows that Truck X, after seeing Powers stopped in front of Fudge, should probably have pulled his rig in front of the Powers' vehicle so that one interstate lane would have remained opened. But he did not. And, in any event, such a maneuver could only have been done by Truck X. Fudge could not move his truck because Powers was in front of him. We hold, therefore, that Fudge did not violate La.R.S. 32:141(A). We also hold that he displayed appropriate signal lights to warn approaching traffic. He therefore complied with La.R.S. 32:141(C).

NEGLIGENCE GENERALLY
Finding no violation of either statute, we must address the issue of whether Fudge was negligent under any other standard of conduct. The jury found he was not. As a truck driver attempting to stop a drunken driver from endangering the lives of others, Fudge owed a duty to act reasonably under the circumstances. The evidence bears out the jury's finding that Fudge acted prudently under the facts and circumstances confronting him. He turned on his emergency flashers before stopping and tried to get Powers turned around. Unfortunately, this tragic accident marred what otherwise was a conscientious effort by two men to protect others from a very dangerous situation. Fudge's conduct was arguably a cause-in-fact of the accident, but Fudge breached no duty to the plaintiff in this case. He acted reasonably under the circumstances. He was not negligent. The breach of duty by Powers and Mouton caused this accident.

JURY INSTRUCTIONS
The plaintiff makes a number of complaints regarding the jury instructions either refused or given by the trial court. First, she contends that the trial court erred in failing to instruct the jury that a vehicle under La.R.S. 32:368 need not experience mechanical failure to be disabled, but may also be disabled by the influence of external phenomena. The record reveals that the trial court charged the jury as follows in regard to a disabled vehicle:

*136 "Although the popular definition of a disabled vehicle involves mechanical failure, it need not be so limited and you may apply your common experience in determining whether any vehicle in this accident was disabled."
We discussed the issue of disability earlier in this opinion and found that the Fudge vehicle was not disabled under the provisions of La.R.S. 32:368 either mechanically or as a result of an external phenomenon. The trial court's instruction expressly stated that disability was not necessarily limited to mechanical failure. We find the instruction was sufficient.
Next, plaintiff contends that the trial court erred in failing to charge the jury that La.R.S. 32:368 does not permit a driver who is required by the statute to put out flares to be the judge of whether flares would be effective. The statute in this case does not purport to give a driver discretion as to whether flares should be put out. The judge read the entire statute to the jury, which was allowed to take a copy of the law with it during deliberations. Failure to charge the jury that the statute does not allow the driver any discretion whether to put out flares was not error.
The plaintiff next contends that the trial court erred in failing to charge the jury that the mere possibility that the accident would have occurred despite the presence of warning devices does not break the chain of causation and absolve Fudge from blame. Although this may be a correct statement of the law, we do not find that the trial court erred in failing to give this direct charge. The trial court's instructions to the jury, taken as a whole, properly conveyed all facets of the law involved that were material and relevant to the positions of the parties. Reeves v. Gulf State Utilities, 312 So.2d 118 (La.App. 1st Cir. 1975) vacated on other grounds, 320 So.2d 902 (La.1975); on remand, 327 So.2d 671 (La. App. 1st Cir. 1976); writ denied, 330 So.2d 309, 311 (La.1976).
Plaintiff also claims that the trial court erred in instructing the jury as follows:
"In determining whether the violation of the statute was a proximate cause in causing the accident, you may consider whether the accident would not have happened if the violation had not been committed. If the accident would have occurred irrespective of the violation, then the violation would not be the proximate cause in causing the accident."
Plaintiff claims this charge confused the jury because the charge failed to state that Fudge was not to be relieved of liability even though the accident might possibly have occurred had Fudge displayed proper warning devices. This argument is similar to the previous argument made by plaintiff. While the use of the terminology "proximate cause" may not be technically correct from a legal standpoint, in the context of the entirety of the charges to the jury we find the charge was adequate. If there was any error, it did not affect the result, and it certainly did not confuse the jury or direct the jury to absolve Fudge of liability.
The plaintiff also complains that although the court charged the jury that if the defendant violated a provision of a statute, he may be negligent, the court failed to charge the jury that the Good Samaritan defense might not be available to Mr. Fudge if the jury found that Fudge had sufficient time to display warning signals between the time he stopped and the time of the accident. As regards statute violation and the Good Samaritan defense, the trial court charged as follows:
"If you find that Mr. Fudge ... was negligent by violation of a statute or otherwise, he may nonetheless be excused from liability for this negligence under what has been referred to as the rescue or Good Samaritan doctrine in Louisiana. And that is, one who acts in an emergency in an effort to prevent damage or injury to others and thereby causes injury or damages to himself or to others may be excused from his negligence in not making the wisest choice in his actions as a rescuer. There is a limit [,] however [,]... and the test to be applied is that of a reasonable man acting under similar circumstances.

*137 In other words, a reasonable rescuer. One who has acted unreasonably as a rescuer may not have the benefit of the rescue doctrine whereas one who has acted in the same manner as a reasonable man would act under the same circumstances may be accorded the benefit of the doctrine. However, whether Mr. Fudge was acting in an emergency to prevent injury or damage to others, and if so, whether he acted reasonably under the circumstances shown to have existed at this time are questions of fact entirely up to you the jury to determine."
We find again that the trial court did not err in failing to give the charge and that the court adequately explained the law of negligence as it relates to rescuers.
Finally, the plaintiff complains about the court's charge relative to virile shares and solidary liability. The plaintiff requested, and the court refused to give, the following charge:
"It is well settled jurisprudence of the State of Louisiana that where negligence of two or more parties combine to produce injuries to other individuals, the parties who are at fault are jointly liable in solido to the injured parties and each of the solidary obligors or debtors are liable only for each of its virile portion of the obligation.
"Accordingly, I hereby instruct you that if you find any of the defendants liable, you are to return a judgment in the full amount of any damages you find that the plaintiff has sustained as a result of the accident in question. This court will subsequently reduce your judgment according to the number of parties you find liable to the plaintiff for damages."
Instead of giving the requested charge, the trial court charged the jury as follows:
"It is well settled jurisprudence of the State of Louisiana that where negligence of two or more parties combine to produce injuries to other individuals, the parties who are at fault are jointly liable in solido that means altogether and each for the whole amount to the injured parties. Accordingly, I hereby instruct you that if you find any of the defendants liable you are to return a judgment in the full amount of any damages that you find that the plaintiff has sustained as a result of this accident."
The plaintiff contends that the charge given by the court was "very confusing and did not allow the jury to properly consider which parties would ultimately be responsible to the plaintiff in damages." Because the jury was told at the outset of the trial that the plaintiff had settled her differences with certain parties to the litigation, the plaintiff claims the jury may have been confused by not being instructed that each party was responsible only for its virile share. We are not capable of determining whether the jury would have been more or less confused by either one of the charges. If the truth be known, the law of solidarity and of virile portions is confusing to some members of the legal profession. The court's refusal to charge the jury as to virile shares, although such a charge may have been material and relevant to the position of the plaintiff, was not such a severe omission in the context of all the charges as to result in error.
The plaintiff also complains that the use of the terminology "proximate cause" rather than "duty risk" constitutes error because duty risk is clearly the law of this state. Duty risk has certainly become the preferred method of analysis in tort cases in the Louisiana appellate courts since Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), was decided. See Pierre v. All State Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). However, failure to distinguish these two types of analyses to a jury and failure to instruct one over the other does not constitute error when, from the totality of the charges, it is clear that the court conveyed the correct legal principles to the jury.
Even had we found that the trial court incorrectly charged the jury, such a finding would not warrant a remand but would necessitate a review of the full record before *138 us and a decision on the merits. Suhor v. Gusse, 388 So.2d 755 (La. 1980); Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975); Guedry v. Firemen's Fund Insurance Company, 392 So.2d 165 (La.App. 1st Cir. 1980). We have closely examined the entire record in the case at bar and find that the jury's award is completely substantiated by the evidence and is definitely not clearly wrong. We have also reviewed the entirety of the trial court's charges to the jury and find that the charges, in their totality, correctly stated the applicable law.
Therefore, for the above and foregoing reasons, the decision of the jury is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] In Bond v. Commercial Union Assurance Co., et al., No. 80-C-1965 (La.1981), the Supreme Court stated that a defendant is not obliged to answer an appeal from a judgment he does not desire to have modified, revised or reversed in part. La.C.C.P. art. 2133.
[2] Mrs. Nelson received $778,000.00 from USF&G in settlement of the claims against Mouton and Affiliated Foods, and $20,000.00 from Greyhound in settlement of claims against Watkins and Greyhound.
[3] § 141. Stopping, standing or parking outside business or residence districts

A. Upon any highway outside of a business or residence district, no person shall stop, park. or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence. Acts 1962, No. 310, § 1.
[4] § 368. Display of warning devices when vehicle disabled

A. Whenever any freight carrying vehicle, passenger bus, truck tractor, trailer, semi-trailer, or any motor vehicle pulling a house trailer or other vehicle, is disabled upon the traveled portion of any highway of this state, or the shoulder thereof, at any time when lighted lamps are required on vehicles, the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in Subsection B of this Section:
(1) A lighted fuse, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.
(2) As soon thereafter as possible, but in any event within the burning period of the fuse (15 minutes), the driver shall place three liquid burning flares (put torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:
(a) One, approximately 100 feet from the disabled vehicle in the center of the lane occupied by such vehicle and toward traffic approaching in that lane.
(b) One, approximately 100 feet in the opposite direction from the disabled vehicle and in the center of the traffic lane occupied by such vehicle.
(c) One at the traffic side of the disabled vehicle approximately 10 feet rearward or forward thereof in the direction of the nearest approaching traffic.
B. Whenever any vehicle referred to in this Section is disabled within 500 feet of a curve, hillcrest or other obstruction to view, the warning signal in that direction shall be placed as to afford ample warning to other users of the highway, but in no case less than 100 feet nor more than 500 feet from the disabled vehicle.
C. Whenever any vehicle of a type referred to in this Section is disabled upon any roadway of a divided highway of the state during the time that lights are required, the appropriate warning devices prescribed in Sub-sections A and E of this Section shall be placed as follows:
(1) One at a distance of approximately 200 feet from the vehicle in the center of the lane occupied by the stopped vehicle and in the direction of traffic approaching in that lane;
(2) One at a distance of approximately 100 feet from the vehicle in the center of the lane occupied by the vehicle and in the direction of traffic approaching in that lane;
(3) One at the traffic side of the vehicle and approximately 10 feet from the vehicle in the direction of the nearest approaching traffic.
D. Whenever any vehicle of a type referred to in this Section is disabled upon the traveled portion of a highway of this state or the shoulder thereof, outside of any municipality, at any time when the display of fuses, flares, red electric lanterns or portable red emergency reflectors is not required, the driver of the vehicle shall display two red flags upon the roadway in the lane of traffic occupied by the disabled vehicle, one at a distance of approximately 100 feet in advance of the vehicle, and one at a distance of approximately 100 feet to the rear of the vehicle.
E. Whenever any motor vehicle used in the transportation of explosives, any cargo tank truck used for the transportation of any flammable liquid or compressed flammable gas, or any motor vehicle using compressed gas as a fuel, is disabled upon a highway
of this state at any time or place mentioned in Sub-section A of this Section, the driver of such vehicle shall immediately display the following warning devices.
(1) One red electric lantern or portable red emergency reflector placed on the roadway at the traffic side of the vehicle; and
(2) Two red electric lanterns or portable red reflectors, one placed approximately 100 feet to the front and one placed approximately 100 feet to the rear of the disabled vehicle in the center of the traffic lane occupied by such vehicle.
Flares, fuses or signals produced by flame shall not be used as warning devices for disabled vehicles of the type mentioned in this Sub-section.
F. The flares, fuses, red electric lanterns, portable red emergency reflectors and flags to be displayed as required in this Section shall conform with the requirements of R.S. 32:367 applicable thereto. Acts 1962, No. 310, § 1.