664 So.2d 718 (1995)
Yvette SUMNER, Plaintiff-Appellant,
v.
Donald P. SUMNER, Jr., et al., Defendants-Appellees.
No. 95-677.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1995.
Writ Denied February 9, 1996.
*719 Christopher J. Roy Sr., W. Jay Luneau, Alexandria, for Yvette Sumner.
A.R. Johnson IV, Lake Charles, for Donald P. Sumner, Jr. et al.
*720 Before KNOLL, COOKS and SAUNDERS, JJ.
KNOLL, Judge.
This appeal concerns the trial court's granting of a motion for summary judgment in a tort suit that involves a two-vehicle accident on Interstate 49 just north of Alexandria. Yvette Sumner (hereafter Sumner), the mother of Priscilla Sumner, appeals the dismissal of her tort action against Teddie L. Lowe, Lowe's employer, Action Delivery Service, Inc., and Action Delivery's liability insurer, Vanliner Insurance Company, for damages resulting from the death of Priscilla.[1] Sumner contends that there were genuine issues of material fact that should have precluded the dismissal of her action on a motion for summary judgment.
In granting the defendants' motion for summary judgment on the issue of liability, the trial court summarized the facts and stated:
The accident occurred when a 1989 Freightliner 18-wheel tractor/trailer driven by Teddie L. Lowe, stopped his vehicle on the shoulder of I-49. Shortly after the truck came to a stop it was struck in the rear by an automobile driven by Donald P. Sumner, Jr.[2] [Priscilla, the Sumners' twenty-one month old daughter, was in a car seat next to her father. She was killed when the car impacted the 18-wheeler.]
Mr. Lowe had stopped his vehicle on the shoulder of the road to make repairs to his windshield wiper. Mr. Lowe testified that he pulled his vehicle completely off the highway, engaged his brakes and emergency flashers. He also turned on his headlights, taillights and running lights. He concedes that he did not place warning triangles behind or in front of his truck. The only eyewitness to the accident, Roger Pikes, stated that the Sumner vehicle, after passing him, veered suddenly to the right and struck the left rear corner of the truck. Mr. Pikes states that the truck was parked completely on the shoulder of the highway and was at least one to two feet to the right of the fog line.
The state trooper who investigated the accident confirmed that the truck was completely off the traveled portion of the highway and that its emergency flashers were operating.
* * * * * *
In the instance [sic] case, it is true that Lowe, the driver of the stalled truck, did not place red reflectors or other warning devices as proscribed [sic] by LSA-R.S. 32:368. However, the jurisprudence is clear that in order to be actionable, there needs to be some causal connexity between the failure to place such warning devices and any resulting accident. Here, the truck was pulled completely off of the highway and was not obstructing the flow of traffic. Further, the driver of the truck had both his headlights and taillights illuminated as well as having on his four-way emergency flashers and running lights.
In keeping with the spirit and purpose of summary judgments to avoid full scale litigation where there is no genuine issue of material fact, summary judgment is warranted in this case on the issue of liability.
(Citations omitted). (Footnote added).
Sumner contends that there were genuine issues of material fact that should have precluded summary judgment. She first contends that the trial court failed to apply La.R.S. 32:296 and 368 in its analysis of the motion for summary judgment. She further argues that the evidence was unclear about why Lowe chose to park his tractor-trailer on the shoulder of the interstate instead of utilizing an exit ramp located seven-tenths of a mile before the accident site. She also argues that the facts are disputed about whether it was raining hard enough to require Lowe to park on the shoulder of the interstate *721 instead of traveling to the next exit ramp to repair his windshield wiper.
A motion for summary judgment is properly granted only where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Appellate review of a summary judgment is de novo, and the appellate court employs the same criteria used by the trial court in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La. 1991).
On appeal, Sumner contends that La. R.S. 32:296 and 368 are applicable. La.R.S. 32:296 provides:
A. No person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder when such stopping or parking on the highway shoulder shall obstruct the flow of traffic or is a hazard to public safety, unless such stopping, parking, or standing is made necessary by an emergency, except:
(1) In those areas designated as parking areas by the Department of Transportation and Development, or
(2) By any public utility personnel or public utility equipment engaged in the operation of the utility business, public vehicles owned by public bodies which are engaged in the conduct of official business, or privately-owned vehicles which are engaged in services authorized by the local governing authority.
(B.) In case of an emergency, the driver of such vehicle must operate it in accordance with the normal standards of prudent conduct to protect himself and others from harm.
Under the clear and unambiguous language of R.S. 32:296, this statute is not applicable. As stated in the statute, its applicability is triggered if the vehicle is left unattended. In the present case, it is undisputed that Lowe remained with the vehicle and that he was actually repairing the vehicle's windshield wiper at the time of the accident.
La.R.S. 32:368 provides, in pertinent part:
(A.) Whenever any freight carrying vehicle... is disabled upon the traveled portion of any highway of this state, or the shoulder thereof, at any time when lighted lamps are required on vehicles, the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in Subsection B of this Section:
(1) A lighted fuse, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of vehicle in the direction of the nearest approaching traffic.
(2) As soon thereafter as possible, but in any event within the burning period of the fuse (15 minutes), the driver shall place three liquid burning flares (put torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:
(a) One, approximately 100 feet from the disabled vehicle in the center of the lane occupied by such vehicle and toward traffic approaching in that lane.
(b) One, approximately 100 feet in the opposite direction of the disabled vehicle and in the center of the traffic lane occupied by such vehicle.
(c) One at the traffic side of the disabled vehicle approximately 10 feet rearward or forward thereof in the direction of the nearest approaching traffic.
* * * * * *
(D.) Whenever any vehicle of a type referred to in this Section is disabled upon the traveled portion of a highway of this state or the shoulder thereof, outside of any municipality, at any time when the display of fuses, flares, red electric lanterns or portable red emergency reflectors is not required, the driver of the vehicle shall display two red flags upon the roadway in the lane of traffic occupied by the disabled vehicle, one at a distance of approximately 100 feet in advance of the *722 vehicle, and one at a distance of approximately 100 feet to the rear of the vehicle.
Duty is a question of law. Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289 (La.1993). La.R.S. 32:368 imposes a duty upon drivers of "disabled" trucks and certain other vehicles to display warning devices during periods of low visibility when the vehicle is disabled on the traveled or shoulder portion of the highway. The statute is a safety measure designed to protect life and property on the highways by providing some type of warning signals to motorists approaching disabled vehicles. Nelson v. Powers, 402 So.2d 129 (La.App. 1 Cir.), writ denied, 409 So.2d 616 (La.1981). In Nelson, the First Circuit further noted:
If La.R.S. 32:368 were interpreted to require the placement of warning devices for every temporary obstruction or condition that forces a truck driver to come to a stop, the consequences would be absurd.... If the condition or phenomenon requires more than a temporary stop or if the intensity of the condition seriously impedes or obstructs the vision of other motorists, a driver subject to the provisions of La.R.S. 32:368 must set out the prescribed warning devices if he stops.
Id. at 134.
After carefully considering La.R.S. 32:368 and the jurisprudence that has addressed it, we find that the statute does not establish a duty that was applicable to the facts presented in the case sub judice.[3]
It is undisputed that Lowe parked the eighteen-wheeler on the shoulder, completely off the traveled portion of the interstate, and that he did not place any warning triangles to the rear of his vehicle. It is likewise undisputed that the eighteen-wheeler had been present on the shoulder for only a matter of minutes, and it did not impede the flow of traffic across the traveled portion of the interstate. Sumner does not contest Lowe's assertion that his stop to repair the windshield wiper was only temporary, that it took only approximately two minutes to repair the wiper, and that the placement of warning devices, as described in La.R.S. 32:368, would have taken more time than the repair that Lowe undertook. Sumner argues that had Lowe been standing at the back of the truck prior to impact, his presence could have been enough to warn a passing motorist of impending danger. This argument is misplaced as there is no duty owed under the circumstances of this case that requires the physical presence of a person to act as a warning. This argument further demonstrates that the absence of warning triangles had no causative link to this accident. This tragic accident was caused by the negligent conduct of one actor, Mr. Sumner. For some unknown reason, Mr. Sumner ignored the clearly visible warning devices Lowe had engaged on the vehicle when Lowe initially stopped the eighteen-wheeler, "veered suddenly to the right and struck the left rear corner of the truck." Simply put, the absence of warning triangles had nothing to do with this accident. Accordingly, the defendants were entitled to summary judgment as a matter of law.
We now turn to the remaining factual assertions Sumner relies upon in her attack on the trial court's summary dismissal of her tort action. Both of Sumner's contentions are grounded in general negligence and relate to Lowe's decision to stop the eighteen-wheeler on the interstate's shoulder. In essence, Sumner states that Lowe should have left the interstate at the exit either directly preceding or just after the accident site, instead of stopping on the shoulder between the exits.
A "genuine issue" is a "triable issue." Toups v. Hawkins, 518 So.2d 1077, 1079 (La.App. 5 Cir.1987). More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94); 639 So.2d 730, 751 *723 (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1983)). In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Smith, 639 So.2d 730.
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577 (La.1989). "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Smith, 639 So.2d at 751. Simply put, a "material" fact is one that would matter in the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Id.
To accept Sumner's factual contentions as genuine issues of material fact, we would have to find that Lowe did not have a legally recognized right to be on the shoulder of the interstate and that disabled vehicles, no matter how short a time they would be parked, could not use the shoulder. This argument is not tenable.
La.R.S. 48:1(21) states, in pertinent part, that the shoulder portion of the highway is provided to accommodate "stopped vehicles, [and] for emergency use." In Suhr v. Felter, 589 So.2d 583 (La.App. 1 Cir.1991), writ denied, 590 So.2d 596 La.1992), the First Circuit held that a truck parked on the shoulder of a highway under ordinary circumstances that did not obstruct the flow of traffic did not constitute fault. Moreover, from the detailed provisions of La.R.S. 32:368, it is clear that disabled vehicles will have occasion to seek refuge on the shoulder of the highway.
In the case sub judice, Lowe testified that he began having difficulties with the windshield wiper on the driver side of the vehicle. Because his wiper was not properly functioning, road grime mixed with mist thrown by passing vehicles collected on Lowe's wind shield and obscured his vision. As stated by Howard McKee, the investigating state trooper, this condition justified Lowe's decision to temporarily park his eighteen-wheeler on the shoulder to tighten the wiper arm. Considering Sumner's two factual assertions, we find that neither factual scenario potentially insures her recovery against defendants, affects her ultimate success, or determines the issue of liability in her favor.
Furthermore, as found by the trial court, it was neither Lowe's parking on the shoulder nor his failure to place warning devices to the rear of his disabled vehicle that caused the accident. Lowe's vehicle was completely on the shoulder, did not impede traffic, and had its headlights, taillights, four-way emergency flashers and running lights illuminated. Considering the facts presented, it was Mr. Sumner's sudden and unexplained intrusion onto the shoulder, as described by Roger Pikes, the eyewitness to the accident, that caused the accident and Priscilla's death. Accordingly, we find no merit to Sumner's objections to the trial court's summary disposition of her lawsuit.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Yvette Sumner.
AFFIRMED.
SAUNDERS, J., dissents and assigns reason.
SAUNDERS, Judge, dissenting.
I respectfully dissent.

LAW
First, I cannot agree with the majority's conclusion that the truck driver had no legal obligation to place the markers. The majority apparently concludes that La.R.S. 48:1(21) permitted defendant to use the shoulder since his was an emergency, but that he was not required by La.R.S. 32:368 to place markers because his vehicle was not "disabled." I cannot accept this suggestion, for I think La.R.S. 32:368 was designed to protect motorists pulling onto the shoulder whether intentionally or inadvertently.
In Rue v. State, Dept. Of Highways, 372 So.2d 1197 (La.1979) (reversing this and the *724 trial court), where the errant driver was presented with "no real or imagined emergency situation," the Supreme Court had this to say:
"A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition."
Id., at 1199. While Rue applied to the question of whether the state could be held liable for transgressions against this right, I believe La.R.S. 32:368 implicitly recognizes this right among fellow motorists.
The case of Nelson v. Powers upon which the majority hinges its contrary conclusion is factually distinguished from the case sub judice. Nelson involved two 18-wheeler truck drivers who heroically decided to drive side-by-side, then stop side-by-side, in an effort to shield other vehicles from an oncoming vehicle running against the traffic traveling eastward on the I-10 Atchafalaya Basin Freeway. Defendant's stop in Nelson was traffic-related, and the court went out of its way to state that the weather played no part in the accident. Under those circumstances, the First Circuit in Nelson properly found La. R.S. 32:368 inapplicable because defendant's truck was not "disabled."
The facts of this case warrant a different conclusion, however. As the court noted in Nelson, the definition of disabled under La. R.S. 32:368 does not require mechanical failure; to the contrary, natural conditions "so intense as to prevent the movement of a vehicle" are sufficient. Badeaux v. Patterson Truck Line, Inc., 247 So.2d 875, 881 (La.App. 3 Cir.), writ denied, (La.1971). In considering this question for the first time, in Badeaux we concluded that La.R.S. 32:368 was intended to include weather-related stops:
Although the popular definition of a disabled vehicle involves mechanical failure, it need not be so limited, and disability may also result from the influence of external phenomena. Certainly when such influence is so intense as to prevent the movement of a vehicle, that vehicle is just as disabled as one which cannot move due to mechanical failure. This is particularly the case for purposes of LSA-R.S. 32:368 which is a safety statute designed to protect other motorists on the highway. It is obvious that a vehicle stopped on the traveled portion of a highway because of external forces which prevent its removal is an equal danger to other motorists as one so stopped because mechanical failure prevents its removal, and the effects of a crash with one or the other would not differ in any respect. Although we find no Louisiana cases on this point, other jurisdictions have given support to our view. Thus the Supreme Court of Oregon, in considering a statute not unsimilar to our own, gave as an example of a disabled automobile one whose lights were suddenly extinguished on a mountain road at night. True, this was a failure of the equipment of the vehicle and not one due to an external cause, but its only effects were to prevent the driver of the automobile from seeing where he was going and even more importantly, to make it difficult for other motorists to see the lightless vehicle. Under these circumstances the automobile was considered disabled for purposes of the statute. Martin v. Oregon Stages, 129 Or. 435, 277 P. 291.
We have an analogous situation in the case at bar. Here the lights of the truck were not extinguished, but the conditions of the atmosphere made it impossible for the driver to see where he was going and they made it extremely difficult for other motorists to see the stopped truck.
Badeaux v. Patterson Truck Line, Inc., 247 So.2d at 881.
I can see nothing in Nelson v. Powers that warrants the majority's appreciation of the law. Indeed, the court in Nelson expressly endorsed an interpretation of La.R.S. 32:368 completely at odds with the conclusion the majority reaches today:
We agree with the Third Circuit that some atmospheric conditions, like the smog in that case and like heavy fog or rain in other situations, can be sufficiently intense to "disable" vehicles within the meaning of La.R.S. 32:368. If the condition or phenomenon requires more than a temporary *725 stop or if the intensity of the condition seriously impedes or obstructs the vision of other motorists, a driver subject to the provisions of La.R.S. 32:368 must set out the prescribed warning devices if he stops.
Nelson v. Powers, 402 So.2d at 134.[1]

FACTUAL ISSUES REMAIN
Second, I disagree with the majority's finding, without the benefit of further factual development, that as a matter of fact, defendant is necessarily free of fault.
In arriving at its conclusion, the majority observes that plaintiff has not disputed certain elements of the case, but noticeably lacking among the recited list of concessions is the level of visibility that day. From what indication I can gather from the limited facts available to us (i.e., without a trial transcript), when the accident occurred it was rainy and foggy, just the type of conditions that a fact finder, given the opportunity, might find imposed upon defendant a duty to properly maintain his vehicle; wait until the next exit; or employ the safety devices for their intended purposes. Nelson; Badeaux.
The jury, whose constituents every day are obligated to wear seat belts just in case they should happen to have one of the two or three automobile accidents of their lifetime, might also conclude that the driver was required to take a few moments to protect lives, particularly since he knew on that specific occasion there existed hazardous weather and traffic conditions.
A summary judgment is not to be used as a substitute for a trial on the merits. This rule permits no exception merely because our review of a cold, limited record tends to suggest that the opponent of the motion is unlikely to prevail at trial.
Weighing such conflicting evidence has no place in a hearing on a motion for summary judgment even when it appears from the record that the nonmoving party may experience difficulty in achieving ultimate success, Simon v. Fasig-Tipton Co. of New York, 524 So.2d 788, 791-92 (La.App. 3d Cir.1988), writs denied, 525 So.2d 1048, 1049 (La.1988), as credibility determinations are best left to the trier of fact. Bercegeay v. Cal-Dive Intern., Inc., 583 So.2d 1181, 1183 (La.App. 1st Cir.), writs denied, 589 So.2d 1070 (La.1991); Ouachita Nat. v. Gulf States Land & Dev., 579 So.2d 1115, 1120 (La.App. 2d Cir.), writs denied, 587 So.2d 695 (La.1991); Roger v. Dufrene, 553 So.2d 1106 (La.App. 4th Cir. 1989), writs denied, 559 So.2d 1358 (La. 1990).
Hopkins v. Sovereign Fire & Cas. Ins., 626 So.2d 880 (La.App. 3 Cir.1993), writs denied, 634 So.2d 390, 402 (La.1994). Moreover, on motions for summary judgment, any reasonable doubt must be resolved against the mover and in favor of trial on the merits. Id., citing Indus. Sand and Abrasives v. L. & N.R. Co., 427 So.2d 1152, 1153 (La.1983).
This is a question I believe the trier of fact must resolve, after first obtaining answers to several predicate questions, among them:
(a) whether it was the certainly inclimate weather or the condition of his vehicle that required its driver to pull over;
(b) and if the former, how the severity of the weather might excuse the driver's not waiting until the next exit only 7/10ths of one mile further to repair the vehicle, yet not warrant charging him with some degree of the blame for imposing unnecessary risk upon other motorists similarly affected by the weather;
(c) but if the latter, why the windshield had not been replaced or repaired sooner.
*726 Only armed with answers to these other questions which might be asked by the cross-examining attorney can the judge or jury draw its most important conclusion, whether markers should have been placed as a matter of fact. Because the majority's disposition of this case on summary grounds forecloses the possibility that these questions might be answered in plaintiff's favor, I respectfully dissent, being of the opinion that more evidence is required.
NOTES
[1] Yvette Sumner's action against her husband, Donald P. Sumner, Jr., and his insurer, Allstate Insurance Company, was dismissed with prejudice after the parties settled the claims for damages. Accordingly, these defendants are no longer involved in this litigation.
[2] Donald P. Sumner, Jr. survived the crash, but sustained brain damage. Because of his injuries, Mr. Sumner has no recollection of the accident. His depositional testimony did not add to the facts and thus was not relied upon by the trial court.
[3] We note that the trial court held that Lowe had a duty to display warning devices. Under our de novo review, we find that the trial court erred in this regard. Nevertheless, we find that he properly granted the defendants' motion for summary judgment.
[1] Moreover, even if La.R.S. 32:368 does not impose such a duty, it does not operate to deny plaintiff's due under La.Civ.Code art. 2315. In Rue, for instance, the Court's inability to allude to any specific statute did not prevent its ruling in plaintiff's favor. See also, e.g., Outlaw v. Bituminous Ins. Co., 357 So.2d 1350 (La.App. 4 Cir.), writ denied, 359 So.2d 1293 (La.1978) (golfer whose ball struck minor who, crouching behind golf bag 172 feet down course, nonetheless liable; golfer could only fulfill his duty by not driving at all).

Finally, placed in legal perspective, I see nothing illogical in plaintiff's theory: If the public fisc in the absence of a express obligation can be held accountable for the conditions of thousands of miles of shoulders, I believe the same should apply to a motorist expressly obligated to take safety measures, particularly when those precautions are designed to address hazards he creates.