**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

No. 97-30569

---

STEPHEN RAY ESTES,
individually and as the natural parent
and tutor, on behalf of JOLIE ESTES,
on behalf of STEPHEN JAMES ESTES,
on behalf of JONATHAN ESTES,
on behalf of JUSTIN ESTES,
on behalf of MIRIAM ESTES;
LANELL ESTES

Plaintiffs-Appellants,

versus

USA TRUCK INCORPORATED;
ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Louisiana

(96-CV-1807)

---

October 29, 1998

Before JOLLY, WIENER, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Appellant Stephen Ray Estes, his wife Lanell Estes, and their minor children (collectively "the

Esteses") seek monetary damages from appellees USA Truck, Inc. and its insurer St. Paul Fire and

Marine Insurance Co. ("USA Truck") for personal injuries suffered by Stephen Ray Estes ("Estes").

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

Appellees pled comparative fault as an affirmative defense to the Estes' claims of negligence. Trial was held limited to the issues of liability and apportionment of fault. At the close of appellants' case in chief, appellees moved for judgment as a matter of law pursuant to F.R.C.P. 50. The district court granted appellees' motion.

## FACTUAL BACKGROUND

Estes was struck by an automobile driven by Marjorie Trant[2] while lending assistance to Willie Henry ("Henry"), the operator of an 18-wheel truck owned by USA Truck. The accident occurred on February 5, 1996 at approximately 11:00 p.m. Henry was attempting to deliver goods to Estes and was having trouble negotiating a left turn from the street on which Henry was traveling onto Estes's street. While Estes helped guide the truck onto his street, Trant struck Estes while he was standing in the southbound lane; the truck was then wholly in the northbound lane. Trant's lane of travel, the southbound lane, was completely unimpeded by the truck at the time of the accident.

The parties stipulate that Trant saw the truck and, before coming completely upon it, realized that it was stopped in the northbound lane. At trial, Trant testified that she was approximately one-half mile up the road heading south when she first saw the truck, and she could tell at that point that it was stopped. Trant also testified that she was a "pretty good distance" from the truck when she first began applying her brakes. The parties also stipulate that, at all relevant times, Henry had his headlights and hazard flashers on; however, Henry failed to place any reflective triangles or flares in the roadway to indicate that the truck was temporarily stopped.

## DISCUSSION

I.     Standard of Review

We review the grant of judgment as a matter of law <u>de novo</u>, applying the same legal standard that applies to the district court. <u>See</u> <u>Omnitech Int'l Inc. v. Clorox Co.</u>, 11 F.3d 1316, 1322-23 (5th

---

[2]Trant is not a party to this litigation, although the jury was allowed to assign a percentage of fault to her.

Cir. 1994). Judgment as a matter of law is warranted after a party has been fully heard by the jury on a given issue, and "there is no legally sufficient evidentiary basis for a reasonable jury to have found for the party with respect to that issue." Fed. R. Civ. P. 50(a). On review, the record is to be viewed in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253-55 (1986); Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 804 (5th Cir. 1997); Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). The propriety of a district court's granting of a motion for judgment as a matter of law, however, "should not be decided by which side has the better of the case, nor should [it] be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question." Boeing, 411 F.2d at 374-75.

II.    Sufficiency of the Evidence

A.    Negligence Per Se

The Federal Motor Carrier Safety Regulations ("the Safety Regulations"), 49 C.F.R. § 350 et seq., provide the following:

> Whenever a commercial motor vehicle is stopped upon the traveled portion of a highway or the shoulder of a highway for any cause other than necessary traffic stops, the driver of the stopped commercial motor vehicle shall immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places . . . warning devices . . . . The flashing signals shall be used during the time the warning devices are picked up for storage before movement of the commercial motor vehicle. The flashing lights may be used at other times while a commercial motor vehicle is stopped in addition to, but not in lieu of, the warning devices . . . .

49 C.F.R. § 392.22(a) (1998) (emphasis added). The Safety Regulations further mandate that commercial vehicles must carry three (3) bidirectional emergency reflective triangles, six (6) fuses, or three (3) liquid-burning flares. See id. §§ 393.95(f)(2)(I) and (ii). They also describe the specific placement of the warning devices. See id. § 392.22(b).

The Esteses argue that the district court erred in finding that there was not sufficient evidence for a reasonable jury to find that the negligence, if any, of the appellees was a cause in fact and a legal cause of Estes's injuries. The Esteses assert that appellees were per se negligent because Henry failed

3

to place warning devices in the roadway as mandated for commercial vehicles by the Safety Regulations. The Louisiana Supreme Court has, however, rejected the term "negligence per se." See Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La. 1993); Weber v. Phoenix Assurance Co. of New York, 273 So.2d 30, 33 (La. 1963). Thus, under Louisiana law, "[t]he violation of a statute or regulation does not automatically, in and of itself, impose civil liability." Fancheaux, 615 So.2d at 292. Consequently, a party will not be held to have been negligent merely because of a finding of a cause in fact and/or a statutory or regulatory violation without an additional finding that the party's actions were a legal cause of the injuries inflicted. See id. at 292-93; Weber, 273 So.2d at 33.

Despite the fact that Henry's violation of the safety regulations did not constitute negligence per se, the Esteses are nonetheless not foreclosed from showing that his inaction amounted to ordinary negligence.

B.     Ordinary Negligence

In Louisiana, a plaintiff establishes a prima facie case of negligence by demonstrating the existence of the following elements: duty, breach, cause in fact, legal cause, and damages. See Fowler v. Roberts, 556 So.2d 1,4 (La. 1990); see also Roberts v. Benoit, 605 So.2d 1032, 1041 (La. 1992); David W. Robertson,[3] The Vocabulary of Negligence: Continuing Causation Confusion 58 LA. L. REV. 1, 4, n. 12 (1997). There is no dispute between the parties as to whether Henry, the driver of the truck, breached his duty under the Safety Regulations. The dispute here concerns whether that breach was a cause in fact and a legal cause of Estes' injuries.

1.     Factual Causation

In determining whether the breach of duty committed by the defendant is the cause in fact of the plaintiff's injuries, one asks the classic "but-for" question: "Would the plaintiff's injuries have been avoided but for the action or inaction of the defendant?" In the instant case, the question is

---

[3]W. Page Keeton Chair in Tort Law, University of Texas at Austin. This article is a revision of a paper delivered to the Summer School for Judges conducted by the Louisiana Judicial College in June 1997.

formulated thusly: would Estes have been struck (or at least would he have been struck with less force) had Henry placed the requisite warning signals in the roadway?

Trant, the driver of the vehicle that struck Estes, testified that, although she was able to see the flashing hazard lights of the truck from some distance—and notwithstanding the fact that the truck's headlights were blinding her—she only slightly reduced the speed of her car (from 45 miles per hour to 40). Appellees contend that this fact proves that, had there been more extensive warning apparatuses in the road, Trant would not have slowed down any further. Despite, appellees' assertion, it appears that one could reasonably conclude otherwise. For instance, one could conclude that additional warning apparatuses would have given Trant reason to reduce her speed even more, as she had already testified that she was inclined to reduce her speed when some warning was provided. Thus, it appears that a reasonable jury could have found that Henry's inaction was a cause in fact of Estes' injuries.

### 2. Legal Causation

In determining whether Henry's failure to comply with the safety regulations was a legal cause of Estes' injuries, one must perform a "scope of protection inquiry" which entails ascertaining the following: "Was the rule of law violated by the defendant designed to protect the plaintiff's general class of persons against the harm the plaintiff suffered?" Robertson, supra, at 14; see also Mathieu v. Imperial Toy Corp. 646 So.2d 318, 322 (La. 1994).

The Esteses argue that Estes was among the class of persons that the Safety Regulations were meant to protect. However, the administrative history of the Safety Regulations states that they were put into place in order "to reduce deaths due to rear end collisions between oncoming traffic and disabled vehicles." 37 Fed.Reg.5038 (March 9, 1972) (emphasis added). This information suggests that Henry's failure to comply with the safety regulations, though a breach of duty, and possibly a cause in fact of Estes' injuries, could not have reasonably been found to be a legal cause of the injuries because the regulations were put in place solely to protect those driving in the same lane of traffic as the disabled commercial vehicle. If we accept this reasoning, neither Trant nor Estes was

5

among the class of persons that the Safety Regulations were meant to protect, and no reasonable jury could find that the appellees' inaction was a legal cause of Estes's injuries. Thus, the Estes' claim for damages would fail as a matter of law.

We have trouble accepting the proposition that the regulations were put in place <u>solely</u> to protect those driving in the same lane of traffic as the disabled commercial vehicle. If the regulations were intended only to guard against rear end collisions, why do they require drivers of disabled vehicles to place one triangle <u>in front of</u> the vehicle? We cannot ascribe surplusage to statutes or regulations, yet the forward triangle would be just that if the sole purpose of the Safety Regulations were to keep same-lane traffic from rear-ending a stopped truck. Clearly, a motorist approaching from the rear would not be able to see such a warning.

Furthermore, in interpreting a Louisiana regulation almost identical to the federal one at issue in this case, Louisiana courts have fashioned a much broader purpose for the requirement of warning triangles, flares, and torches: "The statute is a safety measure designed to protect life and property on the highways by providing some type of warning signals to motorists approaching disabled vehicles." <u>Nelson v. Powers</u>, 402 So.2d 129, 134 (La. Ct. App. 1981). Finally the Supreme Court has warned against relying too heavily on legislative or administrative history when statutory language is clear. <u>See, e.g.</u>, <u>Salinas v. United States</u>, 118 S.Ct. 469, 474 (1997); <u>Ardestani v. INS</u>, 502 U.S. 129, 135-36 (1991).

Whereas a reasonable construction of the regulation might be that it was intended to protect only against rear-end collisions, it seems at least equally, if not more, plausible that—as the Esteses urge—the requirement of warning triangles was designed to protect the disabled vehicle, other vehicles, and any person, including the driver, who might be attending to a problem with the disabled vehicle, regardless of the direction from which the "warnee" might be approaching. As the Esteses insist, "[f]or the regulation to be meaningful at all it has to encompass not only the stopped truck and the approaching motorists but persons who might reasonably be expected to be in the vicinity."

6

Louisiana law establishes a rebuttable presumption that the causation issue will go to the jury "unless reasonable minds could not differ." Williams v. State of Louisiana, 576 So.2d 490, 493 (La. 1991). As we have demonstrated above, the Estes submitted sufficient evidence of causation to be entitled to have their claim decided by the jury.

III.    Comparative Fault

The Esteses argue that the district court committed reversible error when it granted appellees' motion for judgment as a matter of law because there existed well-pled issues of comparative fault under La.C.C.Art. 2323. It is unnecessary for us to determine the percentage of fault absent an actual finding of negligence. We have merely found that Estes submitted sufficient evidence of causation to go to the jury. If the jury finds that the defendants were negligent, it will then be proper for them to consider the issue of comparative fault. See Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1136 (La. 1991).

**CONCLUSION**

There exists legally sufficient evidentiary bases for the jury to have found for Estes with respect to the issue of negligence on the part of the appellees. Therefore, the district court's granting of judgment as a matter of law in favor of appellees is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.